**IN UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MELISSA RUSSELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:24-cv-5197 |
| v. | ) | |
| | ) | Hon. Sunil R. Harjani |
| VILLAGE OF SKOKIE; CHIEF BRIAN | ) | |
| BAKER, in his individual capacity; CHIEF | ) | |
| JESSE BARNES, in his individual capacity; | ) | |
| COMMANDER TIMOTHY GRAMINS, in his | ) | |
| individual capacity. | | |
| | | |
| Defendants. | | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JOINT MOTION
TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................1

I.     FACTUAL BACKGROUND ............................................................................1

II.    LEGAL STANDARD......................................................................................3

III.   ARGUMENT ..................................................................................................4

       A.    Plaintiff's Discrimination Claims Continue to Fail under *Twombly* (Counts I, II, IX). ..............................................................................4

       B.    Plaintiffs' Retaliation Claims Continue to Fail under *Twombly* (Counts V, VI, VII). ...........................................................................7

       C.    Plaintiff Continues to Fail to State §1983 Claims Against Defendants (Counts I, III, V, VIII). .......................................................11

       D.    Plaintiff's Sexual Harassment/Hostile Work Environment Claim Continues to Fail under *Twombly* (Counts III & IV). ...........................13

       E.    Plaintiff's ADA Retaliation Claim Further Fails *under Twombly* (Count VII)...........................................................................15

       F.    Plaintiff's FLSA Overtime Claim Continues to Fail under *Twombly* (Count X). .............................................................................17

       G.    The IWPCA Claim Continues to Fail under *Twombly* (Counts XI, XII). ....................................................................................18

       H.    The Illinois Minimum Wage Act and FLSA Claims Continue to Fail under *Twombly* (Count XI). ...............................................................19

CONCLUSION.........................................................................................................20

CERTIFICATE OF SERVICE .................................................................................21

ii

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*,
    499 F.3d 663 (7th Cir. 2007) ....................................................4

*Arita v. Wexford Health Sources, Inc.*,
    No. 15-CV-01173, 2016 WL 6432578 (N.D. Ill. 2016) .........................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................3, 11, 12

*Baxter v. Vigo County Sch. Corp.*,
    26 F.3d 728 (7th Cir. 1994) ....................................................11

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................ *passim*

*Boumehdi v. Plastag Holdings, LLC*,
    489 F.3d 781 (7th Cir. 2007) ...................................................14, 15

*Boyd v. Illinois State Police*,
    384 F.3d 888 (7th Cir. 2015) ....................................................8

*Brooks v. FedEx Supply Chain, Inc.*,
    No. 319CV00014NJRMAB, 2019 WL 1746264 (S.D. Ill. Apr. 18, 2019) ...........15

*Brooks v. Ross*,
    578 F.3d 574 (7th Cir. 2009) ...................................................17

*Brown v. Club Assist Rd. Serv. U.S., Inc.*,
    No. 12 CV 5710, 2013 WL 5304100 (N.D. Ill. Sept. 19, 2013)...................17, 19

*Brown v. Lululemon Athletica, Inc.*,
    No. 10 C 05672, 2011 WL 741254 (N.D. Ill. Feb. 24, 2011)....................19

*Chapin v. Fort-Rohr Motors, Inc.*,
    621 F.3d 673 (7th Cir. 2010) ...................................................7

*Clark v. Law Off. Of Terrence Kennedy, Jr.*,
    709 F. App'x 826 (7th Cir. 2017) ...............................................4

*Coleman v. County of Cook*,
    No. 10-cv-2388, 2011 WL 2647891 (N.D. Ill. June 22, 2011)....................13

*Collier v. Elgin Cmty. Coll.*,
   No. 4 C 7791, 2006 WL 3743135 (N.D. Ill., Dec.15, 2006) .................................................5

*Cung Hnin v. TOA (USA), LLC*,
   751 F.3d 499 (7th Cir. 2004) ..........................................................................................7

*DeJesus v. HF Management Services*,
   726 F.3d 85 (2d Cir. 2013) ....................................................................................17, 18

*Etheridge v. Hudson Grp. Retail, LLC*,
   No. 20-CV-7204, 2022 WL 375556 (N.D. Ill. Feb. 8, 2022) ......................................... *passim*

*Furnish v. SVI Sys., Inc.*,
   270 F.3d 445 (7th Cir. 2001) ...........................................................................................16

*Gaines v. Dart*,
   No. 20-CV-03487, 2021 WL 394814 (N.D. Ill. 2021) ...........................................................4

*Harris v. Forklift Systems, Inc.*,
   510 U.S. 17 (1993) .................................................................................................14, 15

*Hasan v. U.S. Dep't of Lab.*,
   400 F.3d 1001 (7th Cir. 2005) ...........................................................................................9

*Haymon v. Metra*,
   No. 18 C 848, 2020 WL 1548953 (N.D. Ill. 2020) ...............................................................5

*Hoffman v. RoadLink Workforce Solutions, LLC*,
   No. 12 C 7323, 2014 WL 3808938 (N.D. Ill. Aug. 1, 2014) ................................................18

*Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*,
   260 F.3d 602 (7th Cir. 2001) .....................................................................................11, 12

*Isbell v. Allstate Ins. Co.*,
   418 F.3d 788 (7th Cir. 2005) ............................................................................................7

*Johnson v. Sandidge*,
   87 F. Supp. 2d 832 (N.D. Ill. 1999) .................................................................................13

*Kaminski v. Elite Staffing, Inc.*,
   23 F.4th 774 (7th Cir. 2022) .........................................................................................4, 6

*Kampmier v. Emeritus Corp.*,
   472 F.3d 930 (7th Cir. 2007) ...........................................................................................16

*Longstreet v. Ill. Dep't of Corrections*,
   276 F.3d 379 (7th Cir. 2002) .............................................................................................5

*Michalowski v. Rutherford*,
    82 F. Supp. 3d 775 (N.D. Ill. 2015) ...................................................................14

*Monell v. Department of Soc. Servs.*,
    436 U.S. 658 (1978)..............................................................................................11, 12

*Nance v. Rothwell*,
    No. 09 C 7733, 2011 WL 1770306 (N.D. Ill. May 9, 2011) .................................14

*Naperville Smart Meter Awareness v. City of Naperville*,
    114 F. Supp. 3d 606 (N.D. Ill. 2015), *aff'd*, 900 F.3d 521 (7th Cir. 2018) ..............4

*Petropoulos v. City of Chicago*,
    448 F. Supp. 3d 835 (N.D. Ill. 2020) ...................................................................12

*Pruell v. Caritas Christi*,
    678 F.3d 10 (1st Cir. 2012)...................................................................................18

*Resurrection Home Health Services v. Shannon*,
    2013 IL App (1st) 111605......................................................................................20

*Romeo v. Dart*,
    222 F. Supp. 3d 707 (N.D. Ill. 2016) ...................................................................16

*Rufus v. City of Chicago*,
    No. 18 C 7753, 2021 WL 1088311 (N.D. Ill. Mar. 22, 2021) .................................8

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*,
    786 F.3d 510 (7th Cir. May 8, 2015) .....................................................................4

*Sandifer v. U.S. Steel Corp.*,
    678 F.3d 590 (7th Cir. 2012) ...............................................................................18

*Schloss v. City of Chicago*,
    No. 18 C 1880, 2019 WL 6716613 (N.D. Ill. Dec. 10, 2019) .................................8

*Silver v. Townstone Fin., Inc.*,
    No. 14-cv-1938, 2015 WL 1259507 (N.D. Ill. Mar. 17, 2015) .............................10

*Stephens v. Erickson*,
    569 F.3d 779 (7th Cir. 2009) .................................................................................9

*Strauss v. City of Chicago*,
    760 F.2d 765 (7th Cir. 1985) ...............................................................................12

*Tomanovich v. City of Indianapolis*,
    457 F.3d 656 (7th Cir. 2006) ................................................................7, 9, 10, 11

*Trimble v. All.-DeKalb/Rock-Tenn Co.*,
 801 F. Supp. 2d 764 (N.D. Ill. 2011) .................................................................9

*Trujillo v. Mediterranean Kitchens, Inc.*,
 No. 17-CV-01887, 2017 WL 2958240 (N.D. Ill. July 11, 2017)...........................17

*Vande Zande v. State of Wis. Dep't of Admin.*,
 44 F.3d 538 (7th Cir. 1995) .................................................................................16

*Waggoner v. Olin Corp.*,
 169 F.3d 481 (7th Cir. 1999) ...............................................................................16

*Watson v. Fort Worth Bank & Tr.*,
 487 U.S. 977 (1988)...............................................................................................6

*Whittaker v. N. Illinois Univ.*,
 424 F.3d 640 (7th Cir. 2005) .................................................................................5

*Williams v. SAIC*,
 No. 1:14-cv-01749, 2015 WL 1865930 (S.D. Ind. Apr. 23, 2015)........................10

*Winchester v. Marketti*,
 No. 11 CV 9224, 2012 WL 2076375 (N.D. Ill. 2012).............................................12

*Wood v. Career Educ. Corp.*,
 No. 13 CV 8803, 2015 WL 1538800 (N.D. Ill. Mar. 31, 2015) ...........................14

**Statutes**

820 ILCS § 115/5............................................................................................................19

42 U.S.C. §1983......................................................................................................5, 8, 11, 13

42 U.S.C. § 2000e, *et seq.*..................................................................................................5, 8

42 U.S.C. § 12102(1) .......................................................................................................15, 16

42 U.S.C. § 12102(2)(A).........................................................................................................16

42 U.S.C. § 12112(a) .............................................................................................................15

Fair Labor Standards Act of 1938 (29 U.S.C. § 201 et seq.) ("FLSA")
 ...........................................................................................................................17, 18, 19, 20

Illinois Minimum Wage Law, 820 ILCS 105/4a(1)...............................................................20

Worker's Compensation Act..................................................................................................16

**Rules**

Fed. R. Civ. P. 8 ................................................................................................................5, 6, 7

Fed. R. Civ. P. 12(b)(6) ......................................................................................................3, 4, 7

Fed. R. Civ. Proc. 8(a)(2) .........................................................................................................3

**Other Authorities**

29 C.F.R. § 1630.2(j)(2)(i)–(iii) ..............................................................................................16

## INTRODUCTION

Plaintiff's First Amended Complaint ("FAC") fails to amend or cure any of the deficiencies that Defendants previously identified in their Motion to Dismiss (ECF #21-22) Plaintiff's Original Complaint (ECF #1). Plaintiff does not add any color or relevant detail to her purported discrimination or "injuries" and for several of her claims, there are no amendments whatsoever. And so, Plaintiff's FAC remains riddled with speculative, boilerplate, and conclusory allegations that fail to state a claim upon which relief can be granted, even under this Court's liberal notice pleading standard. Plaintiff recites essentially the same bare bones allegations to support each of her discrimination, hostile work environment, and retaliation claims against the Defendants, without providing sufficient factual matter to support those claims. Plaintiff, Melissa Russell alleges that she was denied promotion, subjected to increased scrutiny at work, denied certain perks and benefits, forced to keep notes in support of her timekeeping, and that her treatment for duty-related injuries was used as a factor in performance and evaluations and promotion opportunities." (ECF #27, ¶154). Yet, she includes no facts, much less a timeline, to support those claims, and, even by her own allegations, confuses counseling to correct her poor timekeeping practices and communication as gender and disability discrimination and retaliation. Her alleged wage claims fare no better. Russell does not indicate how many hours she worked overtime or when or who denied her request for overtime. She does not include an amount of overtime wages that is owed by the Village of Skokie or who rejected her request for overtime.

Plaintiff's First Amended Complaint should be dismissed in its entirety and with prejudice.

## I.     FACTUAL BACKGROUND

The Village of Skokie (hereinafter, "the Village") is an Illinois Municipal Corporation located in Cook County, Illinois which operates the Skokie Police Department (hereinafter, "Department"). (ECF #27, ¶3). Defendants, Brian Baker and Jesse Barnes, are the former and

current Chief of Police of the Department, respectively. (ECF #27, ¶¶4-5). Defendant, Timothy Gramins is a Commander for the Department. (ECF #27, ¶6). Plaintiff, Melissa Russell ("Plaintiff" or "Russell") was hired by the Department on June 29, 2004, as a police officer. She was promoted to the rank of Sergeant on September 1, 2014. (ECF #27, ¶¶11-12).

Russell asserts (on unalleged dates), she suffered several injuries for which she is still receiving treatment. One, "a severe injury to her neck and shoulder" in the line of duty, (ECF #27, ¶62), and an "eye injury during a firing range training exercise." (ECF #27, ¶63). From Plaintiff's FAC, it appears that she has been treating purported work-related injuries for several years, although what specific injury, treatment or whether there are separate worker's compensation claims is still not disclosed. (*Id.*). Plaintiff concedes that the Village has accommodated Russell, amongst other ways, by allowing her a flexible work schedule to attend treatment and medical appointments for her injuries during work hours and working in an administrative specialty unit called Programs & Planning. (ECF #27, ¶¶22,24, 44,48,50,62-63,65).

Though conclusory and lacking in factual support, Plaintiff alleges she was notified that she was failing to communicate with her staff at the Department as to her location and time in office, and accordingly was spoken to about this by her superiors. (ECF #27, ¶¶22,24, 32, 46, 48). That Russell felt she should not have to report when she was on-duty or off-duty, or before leaving to attend medical appointments, is not the same as discrimination on any basis.

Plaintiff formulaically alleges that at some unspecified time, the Defendants failed to promote her; subjected her to increased workplace scrutiny; denied her "perks and benefits" permitted to others who did not complain; forced her to take notes for time off spent at medical appointments and for the time at training; considered her treatment for duty related injuries in performance reviews; (ECF #27, ¶154) and although unclear in the Amended Complaint,

2

discriminated against her and retaliated against her. This is where the details of her allegations begin and end.

Russell is a dissatisfied, unhappy employee who brings this suit on the basis that she was not allowed special treatment and the privilege to do as she wants. She has no basis for her discrimination, retaliation, and wage claims as demonstrated by the absolute lack of facts in her Amended Complaint. For the reasons stated herein, her First Amended Complaint should be dismissed in its entirety, and with prejudice.

## II.  <u>LEGAL STANDARD</u>

A complaint must be dismissed when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Claims filed within the federal courts are governed by Federal Rule of Civil Procedure 8(a)(2) which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must sufficiently "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" *Id.* While a plaintiff need not plead detailed factual allegations, she must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 570. "Facts count, but conclusions do not." *Etheridge v. Hudson Grp. Retail, LLC*, No. 20-CV-7204, 2022 WL 375556, at *4 (N.D. Ill. Feb. 8, 2022)."Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. A plaintiff who says that she has a claim in conclusory fashion, without more, does not say enough. *See Etheridge,* 2022 WL 375556, at *4.

When considering a motion to dismiss an amended complaint, "[w]here the plaintiff has repeatedly failed to remedy the same deficiency, the district court [does] not abuse its discretion by dismissing the claim with prejudice." *Naperville Smart Meter Awareness v. City of Naperville*, 114 F. Supp. 3d 606, 614 (N.D. Ill. 2015), *aff'd*, 900 F.3d 521 (7th Cir. 2018)(quoting *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007)); *see also Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. May 8, 2015) ("Where it is clear that the defect cannot be corrected so that amendment is futile, it might do no harm to deny leave to amend and to enter an immediate final judgment....").

## III.     ARGUMENT

**A.     Plaintiff's Discrimination Claims Continue to Fail under *Twombly* (Counts I, II, IX)**.

The pleading requirement for employment discrimination claims is minimal: "a plaintiff need only identify the type of discrimination, when it occurred, and by whom." *Clark v. Law Off. Of Terrence Kennedy, Jr.*, 709 F. App'x 826, 828 (7th Cir. 2017) (collecting cases). Even with an opportunity to amend, Plaintiff continues to fail to meet even that low standard, by failing to plead *any* factual allegations to establish when the discrimination occurred, by whom, what type, and how any alleged discrimination was tied to her gender. Russell expects the Defendants, and this Court to accept the sole conclusory allegations, without factual support, that she was discriminated against because of her gender, because she personally was subjected to discipline for her time keeping behaviors, and unspecific male counterparts at unalleged times were not. (ECF #27, ¶¶101-128). Such "[b]are, conclusory pleadings of employment discrimination will not survive a motion to dismiss." *Etheridge,* 2022 WL 375556, at *4 (citing *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022)); *see also Gaines v. Dart*, No. 20-CV-03487, 2021 WL 394814, at *2 (N.D. Ill. 2021) ("A plaintiff cannot survive a Rule 12(b)(6) motion to dismiss merely by stating that he is a member of a protected class and then reciting a boilerplate sentence about

discrimination. More allegations are needed to comply with Rule 8."); *Haymon v. Metra*, No. 18 C 848, 2020 WL 1548953, at *7 (N.D. Ill. 2020) (Allegation that the defendant failed to reasonably accommodate the plaintiff's religion, without more, was "bare and conclusory" and "not enough to give the Defendants 'sufficient notice to enable [them] to begin to investigate and prepare a defense[.]'"(citation omitted)). Her amended allegations do not alter this conclusion.

Plaintiff fails to provide any facts to support her claims of gender discrimination or failure to promote based on gender under either 42 U.S.C. §1983 or Title VII. She does, however, plead facts that provide a legitimate business justification for Defendants' conduct and contradict her conclusory allegations that any action was taken on account of her gender. Plaintiff alleges that she was denied promotional opportunities and forced to undergo additional "scrutiny" of her time accounting practices because she is a woman. (ECF #27, ¶¶112, 116-119, 174-202). Yet, she fails to allege that that male applicants were not passed over for promotion after similar circumstances of discipline and complaints of abuse of overtime, and poor time keeping and management. (*Id.* at ¶¶174-195). In Paragraphs 40, 44-49, 57-61, Plaintiff includes allegations involving her use of overtime, sick days, and timekeeping, including specific allegations that allow for the reasonable inference that she was suspected of not properly accounting for her time, and/or abusing Paid Time Off (PTO) and sick leave. Monitoring employee's use of paid benefit time is a legitimate non-discriminatory reason for any action taken. (ECF #27, ¶40, 44-49, 57-61); *see Longstreet v. Ill. Dep't of Corrections,* 276 F.3d 379, 384 (7th Cir. 2002)(holding that plaintiff's "negative performance evaluations and being required to substantiate that her absences from work were illness-related...did not result in tangible job consequences and therefore are not adverse employment actions")*; see also Whittaker v. N. Illinois Univ.*, 424 F.3d 640, 648 (7th Cir. 2005) (similar); *Collier v. Elgin Cmty. Coll.,* No. 4 C 7791, 2006 WL 3743135, *5 (N.D. Ill., Dec.15,

2006) (plaintiff's allegations that she "received less support and greater scrutiny" than other employees was not a materially adverse employment action)("Not everything that makes an employee unhappy is an adverse action").

In such a disparate treatment claim, "the plaintiff is required to prove that the defendant had a discriminatory intent or motive." *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 986 (1988). Plaintiff fails to include any factual allegations indicating a discriminatory intent or motive based on her gender, instead solely relying on her conclusory allegation that "Defendants acted intentionally and willfully." (ECF #27, ¶176). Again, "[f]acts count, but conclusions do not." (*Etheridge,* 2022 WL 375556, at *4), and the Court is not required to take these allegations as true.

Plaintiff does not follow up these paragraphs with any facts supporting the conclusory allegation that the Defendants discriminated against her based on her gender, and provides *no* allegations (factual or otherwise) that the Defendants intended to discriminate against her because of her gender, or failed to promote her based on gender. Indeed, there is no identification of a male employee who engaged in the same conduct with complaints of abuse of overtime, and poor time keeping and management but was not scrutinized. *See Etheridge,* 2022 WL 375556, at *8 (sex discrimination claim failed where plaintiff failed "to point to any facts suggesting that men at [his employer] faced discrimination more generally."); *Kaminski*, 23 F.4th at 776 ("Kaminski alleges she lost her job because of her age, race, and national origin. But Rule 8 requires more.").

Nor do the additional factual allegations in the FAC cure these deficiencies. Plaintiff's additional factual allegations continue to focus on alleged Plaintiff's time-keeping, attendance, and overtime practices, and subsequent requirement by her supervisors that she use personal time for all mediation and physical therapy appointments and is under more scrutiny with her timekeeping practices, after she's been suspected of abusing time entry and overtime. (ECF #27, ¶¶16-49).

6

Apart from name-dropping a number of her male officer colleagues (ECF #27, ¶¶ 23,30-31,38, 43), Plaintiff does not include any factual allegations that support similarly situated male officers have undergone similar disciplinary complaints and been treated differently, nor has she included any allegations that only women who have faced similar complaints have been treated as she claims. (*Id.*) Plaintiff's additional allegations double-down on her confused understanding of gender discrimination with legitimate employment discipline. Accordingly, Plaintiff's continued failure to plead factual allegations in support of a *prima facie* case for discrimination, under Rule 12(b)(6) and Rule 8 requires dismissal of Counts I, II, and IX with prejudice.

**B.    Plaintiffs' Retaliation Claims Continue to Fail under *Twombly* (Counts V, VI, VII).**

To establish a *prima facie* case of retaliation, a plaintiff must show (1) she engaged in a statutorily protected activity; (2) she suffered a materially adverse action by her employer; and (3) a causal link between the two. *See Chapin v. Fort-Rohr Motors, Inc.,* 621 F.3d 673, 677 (7th Cir. 2010). Plaintiff's protected activity must be the "but for" cause of the retaliatory action, *Cung Hnin v. TOA (USA), LLC,* 751 F.3d 499, 508 (7th Cir. 2004), and mere speculation will not suffice. *See Tomanovich v. City of Indianapolis,* 457 F.3d 656, 664 (7th Cir. 2006)(internal complaints are not "protected activities" and actions occurring *before* the EEOC discrimination charge could not be considered retaliatory).

Alternatively, a plaintiff may proceed with a claim of retaliation pursuant the indirect method. *See Isbell v. Allstate Ins. Co.,* 418 F.3d 788, 793 (7th Cir. 2005). This method requires Russell to show: "(1) she engaged in statutorily protected activity; (2) she was performing her job according to [the Village's] legitimate expectations; (3) despite her satisfactory performance, she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Id.*

As a threshold matter, Plaintiff's equal protection claim in Count V must be dismissed as courts do not recognize such claims where plaintiffs simply allege they were retaliated against and suffered materially adverse employment action for complaining about discrimination. (ECF #27, ¶¶ 153-154). The Seventh Circuit has made it clear that the equal protection clause provides no right of action against generic retaliation claims, but rather only against retaliation "on the basis of a protected trait or because of [a plaintiff's] membership in a protected class." *Boyd v. Illinois State Police*, 384 F.3d 888, 898 (7th Cir. 2015). In other words, "retaliating against a person for filing charges of sex discrimination is not the same as discrimination against a person on the grounds of sex. *Id.* (cleaned up). *See Rufus v. City of Chicago*, No. 18 C 7753, 2021 WL 1088311, at *4-5 (N.D. Ill. Mar. 22, 2021) (citing *Schloss v. City of Chicago*, No. 18 C 1880, 2019 WL 6716613, at *4 (N.D. Ill. Dec. 10, 2019)("dismissing an equal protection claim based upon only allegations that the defendant retaliated against the plaintiff for filing an internal complaint and a federal lawsuit asserting sex discrimination").

Nonetheless, Russell's allegations are still insufficient to support 42 U.S.C. §1983 or Title VII retaliation claims under either method where she has not alleged materially adverse actions were taken against her that were causally linked to her complaints, or that she suffered materially adverse actions despite performing her job to the Village's legitimate expectations. In fact, her allegations support the non-pretextual explanation that she was facing complaints and legitimate discipline for abuse of time, compliance issues, inadequate time keeping and related communication issues. (ECF #27, ¶¶16, 18, 19, 21-22, 32, 37, 40, 44, 46-48, 57-60).

First, Plaintiff fails to identify the materially adverse acts purportedly taken against her and by whom. While Plaintiff identifies a laundry list of alleged adverse actions that may have been taken against her because of various actions she purportedly took (some protected, and others not),

8

she fails to identify (1) which, if any, of these actions were, *in fact*, taken against her; (2) the precise complaint activity that supposedly caused the alleged retaliatory action(s) to be taken; (3) *who* retaliated against her; and (4) the timing of any of these alleged actions. Plaintiff asserts in a conclusory fashion that Defendants retaliated against her by taking "materially adverse employment actions" against her, including: failing to promote her, subjecting her to increased work place scrutiny; denying her "perks and benefits" permitted to others who did not complain; forcing plaintiff to take notes for time off spent at medical appointments; forcing plaintiff to add notes for time at training, and utilizing Plaintiff's treatment for duty related injuries in performance reviews. (ECF #27, ¶154). But Russell does not specify *how* any of these alleged actions materially adversely affected her or her job. Russell's chief complaints about being under increased workplace scrutiny over her timekeeping and attendance, and requirements that she take notes are not materially adverse actions under law. *See Trimble v. All.-DeKalb/Rock-Tenn Co.*, 801 F. Supp. 2d 764, 775 (N.D. Ill. 2011)("excessive monitoring" by supervisors following complaint of discrimination is not a materially adverse action). Actions that are merely inconveniences or alterations of job responsibilities, such as petty slights or minor annoyances, are not materially adverse. *Id.*; *see also Stephens v. Erickson*, 569 F.3d 779, 790-91 (7th Cir. 2009)("an action is not materially adverse unless it represents a significant alteration to the employee's duties").

With respect to the promotion, she does not allege that similarly situated male sergeants who did not engage in a statutorily protected activity were not passed over for promotion. *Tomanovich,* 457 F.3d at 667 (citing *Hasan v. U.S. Dep't of Lab.*, 400 F.3d 1001, 1005 (7th Cir. 2005) (explaining that the plaintiff's burden "is to show that after filing the charge that he claims provoked the retaliation, only he, and not any similarly situated job applicant who did not file a charge, was not hired *even though he was qualified* for the job for which he was applying")).

Russell also continues to omit the circumstances surrounding the alleged adverse actions, such as *when* they occurred, *by whom*, and *how* they supposedly were "causally linked" to protected actions she allegedly took. Without factual allegations specifying the *actual* adverse action(s) taken against Plaintiff, *who* took the action, as well as *when* these actions were supposedly taken, it is impossible to determine whether there is, in fact, a plausible causal connection between the allegedly adverse action(s) and plaintiffs' purported protected activity. *See Silver v. Townstone Fin., Inc.,* No. 14-cv-1938, 2015 WL 1259507, at *3 (N.D. Ill. Mar. 17, 2015) (holding that "conclusory" retaliation allegations lacked "sufficient factual detail to raise a plausible right to relief" where the complaint stated only that the defendants retaliated against the plaintiff "when it terminated him for making complaints about unpaid overtime" but "failed to allege how his termination had anything to do with his complaints"); *Williams v. SAIC,* No. 1:14-cv-01749, 2015 WL 1865930, at *3-4 (S.D. Ind. Apr. 23, 2015) ("conclusory statements and unsupported facts" do not "establish a causal connection between any adverse employment action and his filing of the EEOC Charge").[1]

Furthermore, Defendants and this Court are left with no indication as to the amount of time that passed between Plaintiff's alleged protected activity, and the adverse action that provides the basis for her allegations of retaliation. In employment retaliation cases, "the Seventh Circuit allows 'no more than a few days to elapse' between the protected activity and the adverse employment action to raise an inference of causation." *Etheridge,* 2022 WL 375556, at *10 (citations omitted). "The greater the passage of time, the lesser the inference that the adverse action had something to do with the protected activity." *Id.* The same conclusory allegations that serve as the underpinning

---

[1] The FAC now includes allegations regarding the Defendants' knowledge of Plaintiff's EEOC claim but these allegations do nothing to save her claims of retaliation, where the allegedly materially adverse actions taken by Defendants against Plaintiff are one and the same as the alleged complaints underlying her EEOC claim. (ECF # 27, ¶¶93-100, ¶¶11-65); *see Tomanovich,* 457 F.3d at 664.

of her discrimination claims provide no indication of a timeline, passage of time, or any other supporting facts "to buttress the connection between the [protected activity] and the adverse action." *Id.; see also Tomanovich,* 457 F.3d at 667. If anything, Plaintiff's allegations suggest a timeline with alleged complaints predating the EEOC complaint by a year if not more. Accordingly, Plaintiff's retaliation claims in Counts V, VI, and VII must be dismissed.

**C.    Plaintiff Continues to Fail to State §1983 Claims Against Defendants (Counts I, III, V, VIII).**

To impose §1983 liability on the Village, Russell must show that she was deprived of some constitutionally protected right pursuant to one of the Village's customs, polices, or practices. *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 694 (1978). A municipality can violate someone's civil rights by: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a permanent and well-settled custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policymaking authority. *Baxter v. Vigo County Sch. Corp.,* 26 F.3d 728, 734–35 (7th Cir. 1994). Russell apparently proceeds under the second category, arguing a "custom, policy, or practice" of discrimination, sexual harassment and retaliation in Counts I, III, V, and VIII.

However, to state an actionable §1983 claim based on policy, practice, or custom, a plaintiff cannot merely assert the existence of a policy. *See Iqbal,* 566 U.S. at 680-81; *see also Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37,* 260 F.3d 602, 620 (7th Cir. 2001)(allegation that "the school board maintained a policy or ignoring such violations in reckless disregard" was insufficient to state a claim for policy or practice). Like her Original Complaint, Plaintiff's sole allegation on this point is that the "Village has a custom, policy and/or practice of discriminating against female officers." (ECF #27, ¶110, 132,157,178). She fails to allege (nor can she), that that similarly situated male applicants were not passed over for promotion, or any facts to support that

11

other female officers were actually discriminated against. The United Supreme Court in *Iqbal*, and the Seventh Circuit in *Horwitz* were clear: merely stating that the policy exists is not enough.

Furthermore, for *Monell* claims, "[g]eneric allegations – based on a single experience" are also not enough. *Petropoulos v. City of Chicago*, 448 F. Supp. 3d 835, 843 (N.D. Ill. 2020). Plaintiff here provides no factual details as to her personal experience, and zero factual allegations to support her claim of discrimination by the Village against another female officer, much less a custom, policy, or practice. "Courts in this District regularly dismiss *Monell* claims where the plaintiff has failed to allege instances other than that from which he suffered." *Id.* (citation omitted); *see also Arita v. Wexford Health Sources, Inc.*, No. 15-CV-01173, 2016 WL 6432578, at *2 (N.D. Ill. 2016)(rejecting *Monell* claim because plaintiff's own experiences were the only allegations of misconduct); *Winchester v. Marketti*, No. 11 CV 9224, 2012 WL 2076375, at *4 (N.D. Ill. 2012)("What is fatal to the *Monell* claims, however, is that Plaintiff makes no attempt to plead a pattern of similar constitutional violations with any degree of factual specificity."). Indeed, Plaintiff's circumstance does not support discrimination by the Village against her personally. Plaintiff was promoted to sergeant. (ECF #27, ¶12). She works in an administrative position that accommodates her work restrictions and has a flexible work schedule to accommodate those appointments. (ECF #27, ¶40, 44, 50-55, 65, 172). Her claims that the Village has treated her unfairly simply cannot be sustained.

Plaintiff fails to allege the existence of a widespread custom of the Village because she does not allege "a pattern of conduct, including incidents other than in the plaintiff's own case, leading to an inference that such custom, policy, or practice must exist." *Strauss v. City of Chicago*, 760 F.2d 765, 768 (7th Cir. 1985). Allegations of *multiple* incidents are required because a municipality can be held liable only if it had actual or imputed awareness of the custom and its

consequences, thereby showing the municipality's approval of the alleged unconstitutional violation. *See Johnson v. Sandidge*, 87 F. Supp. 2d 832, 834 (N.D. Ill. 1999). Plaintiff's new allegation that "[t]he only female promoted to a command staff position (Commander or above) is Denise Franklin," (ECF #27, ¶67) does nothing to change this analysis (it is not an allegation of discrimination, and it is the only allegation where Plaintiff identifies a female colleague at the Village in any capacity). Absent *any* further details, factual incidents, or claims that another female has been discriminated against—Plaintiff's §1983 claims against the Village must be dismissed, and with prejudice.

As for the individual Defendants, Plaintiff fails to allege any facts whatsoever that Baker, Barnes and/or Gramins were final decision makers with authority to promote Plaintiff. Plaintiff's Complaint contains no plausible allegations that her injuries were caused by a person with final policymaking authority acting on behalf of the Village. *See Coleman v. County of Cook*, No. 10-cv-2388, 2011 WL 2647891, *14 (N.D. Ill. June 22, 2011). The new allegations that Gramins serves as one member on a multimember promotability committee, and that the Chief (Barnes & Baker) provides a recommendation to the Village Manager after promotability scoring and ranking is completed along with other components of the process, indicates that that none of the individual Defendants separately or collectively have final decision-making authority. (ECF #27, ¶¶80-86). As such, Plaintiff's §1983 claim for failure to promote against the individual defendants must be dismissed with prejudice.

**D.** **Plaintiff's Sexual Harassment/Hostile Work Environment Claim Continues to Fail under *Twombly* (Counts III & IV).**

Like her other claims, Plaintiff's sexual harassment/hostile work environment claims suffer from the same deficiencies of the Original Complaint and fail to meet to the requisite standard under *Twombly*. Plaintiff is required to set forth factual allegations sufficient to "raise [ ] the

13

possibility of severe or pervasive sexual harassment from a speculative to a plausible level." *Michalowski v. Rutherford,* 82 F. Supp. 3d 775, 795 (N.D. Ill. 2015)(quotation omitted). Where the complaint merely alleges "in a conclusory fashion that [the plaintiff] was threatened, harassed, and intimidated…but [does] not provide even the slightest detail about the character or severity of this harassment," a hostile work environment claim must be dismissed. *Nance v. Rothwell,* No. 09 C 7733, 2011 WL 1770306, at *8 (N.D. Ill. May 9, 2011) (citation omitted); *see also Wood v. Career Educ. Corp.,* No. 13 CV 8803, 2015 WL 1538800, at *7 (N.D. Ill. Mar. 31, 2015) (similar).

To state a claim for hostile work environment/sexual harassment, plaintiff must allege: "(1) she was subjected to unwelcome harassment; (2) the harassment was based on her sex; (3) the harassment was sufficiently severe or pervasive so as to alter the condition of her employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability." *Boumehdi v. Plastag Holdings, LLC,* 489 F.3d 781, 788 (7th Cir. 2007) (citations omitted). Plaintiff's Complaint only contains boilerplate labels and legal conclusions and fails to set forth the minimal factual allegations necessary to state a plausible claim. Plaintiff fails to articulate *who* harassed her, *when* the harassment occurred, or the *nature* of the harassment. In fact, Plaintiff fails to allege *a single instance* of unwanted verbal or physical conduct of a sexual nature that she personally experienced or witnessed—much less sufficiently serious or frequent instances of such conduct to establish "severe or pervasive" harassment. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).

Nor has Plaintiff alleged any allegation to support or explain how her working environment is "hostile" or "abusive" apart from her conclusory allegations that it is "hostile." (ECF #27, ¶¶131-132, 141-142). An environment is "hostile" or "abusive" when it is both objectively and subjectively offensive. *Boumehdi*, 489 F.3d at 788. While Plaintiff alleges that she has complained

14

of the allegedly offensive conduct, (thus subjectively offensive) she fails to allege that the conduct was objectively offensive. In fact, Plaintiff's only substantive amendment to these claims was that following her alleged complaints to her superiors, she claims that in response to her complaints, "Defendants Baker and Barnes would typically respond, 'Tim is Tim.'" (ECF #27, ¶147). That's it. There are no further allegations as to what that response allegedly indicates, much less that it is objectively or subjectively offensive. There is no indication of any anti-female animus. *Boumehdi*, 489 F.3d at 788.

When determining whether harassment is objectively offensive, the Court must consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. Here, Plaintiff fails to make any of the requisite factual allegations. *See Brooks v. FedEx Supply Chain, Inc.*, No. 319CV00014NJRMAB, 2019 WL 1746264, at *4 (S.D. Ill. Apr. 18, 2019)(sexual harassment claim against "supervisors" and "co-workers," could not proceed absent any factual allegations). Counts III and IV must be dismissed with prejudice.

**E.     Plaintiff's ADA Retaliation Claim Further Fails *under Twombly* (Count VII).**

Plaintiff's ADA retaliation claim must be dismissed for the reasons stated *supra*, Section III (B), and for the further reason that Plaintiff fails to allege she suffered/s from an ADA disability. The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability...." *See* 42 U.S.C. § 12112(a). Russell is required to allege that she has a disability, and that she was discriminated against because of it. She fails to do so.

A disability is "a physical or mental impairment that substantially limits one or more major life activities of" the plaintiff, "a record of such an impairment," or "being regarded as having such an impairment." *See* 42 U.S.C. § 12102(1). Russell alleges two injuries : (1) a severe injury to her

neck and shoulder in the line of duty; and (2) an eye injury firing a firing range training exercise. (ECF #27, ¶¶62-63). However, she fails to allege any facts to show that she is substantially limited in a major life activity but that she can still perform the essential functions of her job. 42 U.S.C. § 12102(1), (2)(A); *Furnish v. SVI Sys., Inc.,* 270 F.3d 445, 449 (7th Cir. 2001). And, unless her conditions are long-lasting or permanent, she is not a qualified individual with a disability. *See Waggoner v. Olin Corp.*, 169 F.3d 481, 484 (7th Cir. 1999). "Intermittent, episodic impairments are not disabilities, the standard example being a broken leg." *Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538, 543 (7th Cir. 1995). Further, if Plaintiff has reached maximum medical improvement and released to return to work, she may not be disabled under the ADA. In determining disability, the Seventh Circuit "consider[s] 'the nature and severity of the impairment, the duration and expected duration of the impairment, and the permanent or long term impact or the expected permanent or long term impact of or resulting from the impairment.'" *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 937 (7th Cir. 2007) (quoting 29 C.F.R. § 1630.2(j)(2)(i)–(iii)).

Second, though she fails to allege that she ever sought an accommodation from the Village, she admits that the Village accommodated her alleged disability. (ECF #27, ¶¶65, 172). Plaintiff fails to allege *any* supporting factual allegations regarding who from the Village engaged in retaliatory conduct related to her alleged disability, when that conduct occurred, or how she asks for an accommodation and that accommodation was denied. Assuming, *arguendo*, Plaintiff's injuries are disabilities under the ADA and that she sought an accommodation, she is entitled to a reasonable accommodation, not an accommodation of her choice. *Romeo v. Dart*, 222 F. Supp. 3d 707, 713 (N.D. Ill. 2016).

In addition, it is still unclear from the face of Plaintiff's FAC, if Plaintiff has made a Worker's Compensation Act claim/s related to her alleged injuries (this is implied but unalleged,

16

or if this alleged claim is disputed. (ECF #27, ¶¶25-27, 65). If a Worker's Compensation Act claim is disputed, it is misleading for Plaintiff to allege that the Village, by contesting a claim, is discriminating or retaliating against her, where she further fails to allege that her male counterparts have not had their claims disputed by the Village. (*E.g.,* ECF #27). Plaintiff further fails to allege how, when, and what of her alleged Worker's Compensation benefits were interfered with or stopped. She has not alleged that she ever made a claim, or that she received benefits. (*Id.*)

For these additional reasons, Plaintiff's claim must be dismissed with prejudice.

**F.     Plaintiff's FLSA Overtime Claim Continues to Fail under *Twombly* (Count X).**

To state a claim under the FLSA for failure to pay overtime, a plaintiff is required to plead some details beyond a bare allegation that she worked more than 40 hours without premium pay in a given work week. *See Trujillo v. Mediterranean Kitchens, Inc.*, No. 17-CV-01887, 2017 WL 2958240, at *1 (N.D. Ill. July 11, 2017). While a plaintiff need not "plead infinitesimal details to render [FLSA] claims plausible or provide defendants fair notice of the claims against them," *Brown v. Club Assist Rd. Serv. U.S., Inc.*, No. 12 CV 5710, 2013 WL 5304100, at *6 (N.D. Ill. Sept. 19, 2013), she must still "provid[e] some specific facts to ground those legal claims." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009); *see DeJesus v. HF Management Services,* 726 F.3d 85, 89 (2d Cir. 2013)(allegations that plaintiff worked over forty hours in "some or all weeks" insufficient because at least one given week must be alleged).

Plaintiff alleges that Barnes required her to "take calls, texts and emails outside of work hours and was not allowed to log or seek compensation for that time." (ECF #27, ¶51), and that she took "phone calls from subordinates on nights and weekends when she was not on duty but refuses to pay for the time." (ECF #27, ¶208). While the allegations of the FAC gives some color to the nature of the calls allegedly underlying the overtime, Plaintiff still fails to allege when the calls were made, how long the calls were, or give any estimate of hours that she allegedly worked

overtime. There are also no allegations of how Defendants knew that they failed to compensate her and for how much. (ECF #27, ¶¶50-56). Plaintiff also claims that the Village refused to pay her for this nonspecific overtime, but not that she ever asked the Village for overtime pay and was denied. (ECF #27, ¶207).

Plaintiff's allegations still fail to put Defendants on notice of the periods during which Defendants allegedly failed to properly compensate her. [2] Plaintiff does not allege how many hours she worked in any given work week. She only alleges, without temporal limitation or context, that she's worked 70 hours overtime. Further, Plaintiff does not indicate when she submitted her request for overtime for these telephone calls and who denied the request. Without factual allegations in support, Defendants are not on notice of the factual basis for her FLSA claim. *See Pruell v. Caritas Christi,* 678 F.3d 10, 12-13 (1st Cir. 2012)(allegation that during their employment, "Plaintiffs regularly worked hours over 40 in a week and were not compensated for such time" failed to state a claim), and *DeJesus*, 726 F.3d at 89 (allegation that "in 'some or all weeks' [plaintiff] worked more than "forty hours" a week without being paid '1.5' times her rate of compensation" insufficient). For these reasons, Plaintiff's FAC fails to state a FLSA claim, and Count X must be dismissed with prejudice.

## G.    The IWPCA Claim Continues to Fail under *Twombly* (Counts XI, XII).

The IWPCA "mandates payment of wages only to the extent the parties' contract or employment agreement requires such payment." *Hoffman v. RoadLink Workforce Solutions, LLC,* No. 12 C 7323, 2014 WL 3808938, at *4 (N.D. Ill. Aug. 1, 2014). "It is well established that an employee can have no claim under the IWPCA unless the employer and employee agreed that the

---

[2] These particular requirements are important as Plaintiff worked a flexible schedule so her hours fluctuated and many, if not all of these calls, may have been during that flexible work time or may be *de minimus. See Sandifer v. U.S. Steel Corp.*, 678 F.3d 590, 593 (7th Cir. 2012)(applying *de minimus* rule).

former would compensate the latter for the particular work allegedly performed." *Brown v. Lululemon Athletica, Inc.*, No. 10 C 05672, 2011 WL 741254, at *3 (N.D. Ill. Feb. 24, 2011). Under the IWPCA, a plaintiff "must plead that wages or final compensation is due to him or her as an employee from an employer under an employment contract or agreement." *Brown,* 2013 WL 5304100, at *8 (citation omitted); *see also* 820 ILCS § 115/5.

As with her FLSA claim, the FAC only added color as to the nature of the calls allegedly underlying the overtime. Plaintiff still fails to allege when the calls were made, how long the calls were, or give any estimate of hours that she allegedly worked overtime. (ECF #27, ¶¶216-217). There are also no allegations of how Defendants knew that they failed to compensate her and for how much. (ECF #27, ¶¶50-56). Critically, there are also still no allegations that Village agreed to compensate Russell "as an employee" and "under an employment contract or agreement" for her Programs and Planning assignment. (*See id.*). Nor are there any allegations about her assignment on Programs and Planning, whether it was a voluntary assignment or part of her job requirements. (*See id.*).

Plaintiff has failed to allege what hours she worked and specify the work she performed in support of her claim for failure to pay wages. Absent such specificity, Plaintiff's FAC fails to address the deficiencies of the Original Complaint, and Count XII should be dismissed with prejudice.

### H. The Illinois Minimum Wage Act and FLSA Claims Continue to Fail under *Twombly* (Count XI).

Plaintiff asserts that "defendants also violated provisions of the Illinois Minimum Wage Law." (ECF #27, ¶214), without specifying what provisions were allegedly violated. This is insufficient under *Twombly,* and this claim must be dismissed. Plaintiff has not, because she

cannot, allege that she was not paid $14.00 per hour[3] as her hourly wages far exceeded the Illinois minimum wage. Likewise, "[a] violation of the Illinois Minimum Wage Law is contingent on establishing a violation under the FLSA, which similarly provides for a standard 40-hour workweek and requires employers pay overtime wages of 1 ½ their regular rate." *Resurrection Home Health Services v. Shannon*, 2013 IL App (1st) 111605, ¶23.[4] For the reasons Plaintiff's FLSA claim fails, so too does her Illinois Minimum Wage Act claim. Plaintiff's FAC supplemented no substantive amended factual allegations to address these deficiencies and Count XI should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the Defendants' Joint Motion to Dismiss should be granted in its entirety.

Date: <u>November 8, 2024</u>　　　　　　Respectfully submitted,

**VILLAGE OF SKOKIE**

By:<u>*/s/ Madison C. Shepley*</u>
　　One of Its Attorneys
　　Yvette Heintzelman
　　Madison C. Shepley
　　CLARK HILL PLC
　　130 E. Randolph Street, Suite 3900
　　Chicago, Illinois 60601
　　(312) 985-5900
　　yheintzelman@clarkhill.com
　　mshepley@clarkhill.com

---

[3] The minimum wage in Illinois is $14.00 beginning January 1, 2024.
[4] "The overtime provision of the Illinois Minimum Wage Law, 820 ILCS 105/4a(1), is parallel to that of the [Fair Labor Standards Act of 1938 (29 U.S.C. § 201 et seq.)], and Illinois courts apply the same principles * * *." *Resurrection,* 2013 IL App (1st) 111605, ¶23 (citation omitted).

**FORMER CHIEF BRIAN BAKER, CURRENT CHIEF JESSE BARNES, and COMMANDER TIMOTHY GRAMINS**

By:*/s/ Laura L. Scarry*
    One of Their Attorneys
    Laura L. Scarry
    James L. DeAno
    DeANO & SCARRY, LLC
    111 W. Jackson Blvd.
    Suite 1700
    Chicago, IL 60604
    (630) 690-2800
    lscarry@deanoscarry.com
    jdeano@deanoscarry.com

## CERTIFICATE OF SERVICE

    I hereby certify that on this 8th day of November, 2024, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which provided electronic service upon all parties of record.

                */s/ Madison C. Shepley*
                Madison C. Shepley