**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MELISSA RUSSELL** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 24-CV-5197** |
| | ) | |
| **VILLAGE OF SKOKIE; CHIEF BRIAN** | ) | **Hon. April M. Perry** |
| **BAKER, in his individual capacity;** | ) | |
| **CHIEF JESSE BARNES, in his** | ) | **Jury Trial Demanded** |
| **individual capacity; COMMANDER** | ) | |
| **TIMOTHY GRAMINS, in his individual** | ) | |
| **capacity.** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS
AMENDED COMPLAINT**

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................... 1

II. FACTS ..................................................................................................... 1

III. ARGUMENT .............................................................................................. 3

    A. Russell Meets the Pleading Standard For All Claims ............................................ 6

    B. Defendants Confuse The Pleading Requirements At The Initial
        Pleading Stage Versus Summary Judgment ........................................................ 9

    C. Russell Adequately Pled Her Claims .................................................................. 10

        1. Plaintiff's Gender Discrimination & Harassment Claims ............................. 11

        2. Plaintiff's Retaliation Claims ....................................................................... 11

        3. Plaintiff's ADA Retaliation Claim ................................................................ 13

        4. Plaintiff's Failure to Promote Claims .......................................................... 14

    D. Russell Properly Pled the FLSA, IMWL and IWPCA Claims .............................. 14

        1. FLSA Claims ............................................................................................... 14

        2. IMWL Claims .............................................................................................. 17

        3. IWPCA Claims ............................................................................................ 17

IV. CONCLUSION ........................................................................................... 18

CERTIFICATE OF SERVICE ............................................................................ 19

## TABLE OF AUTHORITIES

**Cases**                                                                           **Page(s)**

*American Nurses' Association v. Illinois,*
783 F.2d 716 (7th Cir. 1986) ............................................................... 4

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ............................................................................. 7

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ........................................................................ 7, 10

*Bennett v. Schmidt,*
153 F.3d 516 (7th Cir. 1998) ............................................................ 4, 7

*Brown v. Club Assist Road Services U.S., Inc.,*
2013 U.S. Dist. LEXIS 133990 (N.D. Ill. Sept. 19, 2013) .................... 15

*Clark v. Law Office of Terrence Kennedy, Jr.,*
709 F. App'x 826 (7th Cir. 2017) ........................................................ 7

*Conley v. Gibson,*
355 U.S. 41 (1957) ......................................................................... 5, 10

*Davis v. Metropolitan Pier & Exposition Authority,*
2012 U.S. Dist. LEXIS 91710 (N.D. Ill. July 3, 2012) ........................... 8

*Dehainaut v. Pena,*
32 F.3d 1066 (7th Cir. 1994) ............................................................... 5

*Divine v. Volunteers of America of Illinois,*
319 F. Supp. 3d 994 (N.D. Ill. 2018) ................................................... 15

*EEOC v. Concentra Health Services,*
496 F.3d 773 (7th Cir. 2007) ............................................................ 4, 5

*Etheridge v. Hudson Group (HG) Retail, LLC,*
2022 U.S. Dist. LEXIS 21826 (N.D. Ill. Feb. 8, 2022) ....................... 6, 9

*Furnish v. Svi Systems,*
270 F.3d 445 (7th Cir. 2001) ............................................................. 14

*Graham v. Board of Education,*
8 F.4th 625 (7th Cir. 2021) ............................................................. 6, 10

*Haltek v. Village of Park Forest,*
    1995 U.S. Dist. LEXIS 5543 (N.D. Ill. Apr. 21, 1995) ........................................... 6

*Hancox v. Ulta Salon, Cosmetics & Fragrance, Inc.,*
    2018 U.S. Dist. LEXIS 121823 (N.D. Ill. July 20, 2018) ..................................... 15

*Hughes v. Scarlett's G.P., Inc.,*
    2016 U.S. Dist. LEXIS 103880 (N.D. Ill. Aug. 8, 2016) ..................................... 15

*Huri v. Office of the Chief Judge of the Circuit Court of Cook County,*
    804 F.3d 826 (7th Cir. 2015) ................................................................................11

*Knapp v. City of Markham,*
    2011 U.S. Dist. LEXIS 87985 (N.D. Ill. Aug. 9, 2011)......................................... 17

*Kolupa v. Roselle Park Dist*rict,
    438 F.3d 713 (7th Cir. 2006) ................................................................................. 4

*Lavalais v. Village of Melrose Park,*
    734 F.3d 629 (7th Cir. 2013) ................................................................................. 8

*Leatherman v. Tarrant County Narcotics Unit,*
    113 S. Ct. 1160 (1993)................................................................................... 6, 10

*Lucas v. Ferrara Candy Co.,*
    2014 U.S. Dist. LEXIS 99600 (N.D. Ill. July 22, 2014) ......................................... 8

*Luevano v. Wal-Mart Stores, Inc.,*
    722 F.3d 1014 (7th Cir. 2013) ............................................................................... 8

*McNabola v. Chicago Transit Authority,*
    10 F.3d 501 (7th Cir. 1993) ................................................................................... 6

*Palda v. General Dynamics Corporation,*
    47 F.3d 872 (7th Cir. Feb. 10, 1995) .................................................................... 5

*Pickrel v. City of Springfield,*
    45 F.3d 1115 (7th Cir. 1995).................................................................................. 5

*Sanchez v. Haltz Construction, Inc.,*
    2012 U.S. Dist. LEXIS 537 (N.D. Ill. Jan. 4, 2012)............................................ 15

*Scheuer v. Rhodes,*
    416 U.S. 232 (1974) .............................................................................................. 5

*Secretary of Labor v. Labbe,*
    319 F. App'x 761 (11th Cir. 2008).................................................................... 15

*Sherwin Manor Nursing Center, Inc. v. McAuliffe,*
    37 F.3d 1216 (7th Cir. 1994) ....................................................................... 5

*Silver v. Townstone Financial, Inc.,*
    2015 U.S. Dist. LEXIS 32857 (N.D. Ill. Mar. 17, 2015) ...................................... 17

*Sims v. Mulcahy,*
    902 F.2d 524 (7th Cir.), cert. denied, 498 U.S. 897 (1990) ................................. 6

*Swanson v. Citbank, N.A.,*
    614 F.3d 400 (7th Cir. 2010) ....................................................... 6, 7, 10

*Swierkiewicz v. Sorema N. A.,*
    534 U.S. 506 (2002) ................................................................. 6, 8, 10

*Tamayo v. Blagojevich,*
    526 F.3d 1074 (7th Cir. 2008) ...................................................... 4, 5, 8

*Thompson v. Boggs,*
    33 F.3d 847 (7th Cir. 1994) .............................................................. 5

*Trujillo v. Mediterranean Kitchens, Inc.,*
    2017 U.S. Dist. LEXIS 106449 (N.D. Ill. July 11, 2017) ...................................... 15

*Washington v. Magna Exteriors,*
    2019 U.S. Dist. LEXIS 172607 (N.D. Ill. Oct. 4, 2019).................................11, 12


**Statutes**

42 U.S.C § 1983.............................................................................. 6, 10

42 U.S.C § 2000, *et seq.* .................................................................... 4, 8

Americans With Disabilities Act ("ADA")
    29 U.S.C. § 12101 et seq ........................................................... 13, 14

Fair Labor Standards Act ("FLSA")
    29 U.S.C. § 201 et seq ......................................................... 14, 15, 17

Illinois Minimum Wage Law ("IMWL")
    820 ILCS 105/4................................................................... 17

Illinois Wage Payment and Collection Act ("IWPCA")
    820 ILCS 115/1................................................................... 17

**Rules**

Fed.R.Civ.P. 8.................................................................................................... 4, 7, 8

Fed.R.Civ.P. 12(b)(6) ........................................................................................... 5, 8

**Other Authorities**

29 C.F.R. 785.11.................................................................................................... 17

## I.
## INTRODUCTION

Plaintiff Melissa Russell experienced gender discrimination, a hostile work environment and retaliation while working at the Skokie Police Department. Sgt. Russell asserts claims for gender discrimination (Counts I & II) under §1983 and Title VII; a hostile work environment (Counts III & IV) under §1983 and Title VII; retaliation (Counts V - VII) under §1983, Title VII and ADA; failure to promote (Counts VIII - IX) under §1983 and Title VII, and wage claims (Count X - XII) under the FLSA, IMWL and IWPCA.

As a preliminary issue, Plaintiff notes that the case was assigned to Judge Harjani when Defendant's filed their motion. Judge Harjani's Standing Orders require a party to meet and confer with opposing counsel prior to filing a motion to dismiss. https://www.ilnd.uscourts.gov/judge-info.aspx?IuUaWzNcEoOljgUqPdQ5cOJ8/i2ZXd/m Defendants failed to "meet and confer" as required. This alone is a basis for denying Defendants' motion.

## II.
## FACTS

Sergeant Melissa Russell ("Russell") has worked for the Skokie Police Department since 2004 (Am. Cmplt. at ¶ 12)[1]. Russell has been harassed because of her sex (female), and has been subjected to a hostile working environment because of her gender, including unwarranted complaints, conduct and treatment, to which her similarly situated male counterparts are not subjected. (¶ 14).

When Russell suffered two injuries in the line of duty, she was forced to use vacation time for medical appointments, but her male counterparts were allowed to use

---

[1] All references to "¶ x" refer to specific paragraphs in Plaintiff's Amended Complaint.

1

Emergency Leave Time or sick time for their injuries. (¶16). Russell has been denied the opportunity to work from home while her male counterparts are allowed to do so. (¶ 16). Beginning in 2021, Defendants forced Russell to use her personal insurance, rather than workers' compensation, for all medical appointments for her injuries sustained in the line of duty. They treat injured male officers differently – allowing males to use workers' compensation insurance to pay for those medical services and treatments. (¶ 22). Russell is forced to pay for medical treatments related to her on the job injuries with her own personal funds, yet males are not forced to do the same. (¶ 26).

Defendants repeatedly undermine Russell's work and create the appearance that Russell is violating rules just before a promotional exam process begins in an effort to thwart Russell's promotional opportunities. (¶¶ 34, 41, 47). Russell has been passed over for the promotion to Commander eight (8) times, despite receiving "Exceptional" performance reviews. (¶ 71). Historically, within the Skokie Police Department, individuals are promoted to Commander only *after* they attend a course at Northwestern University's School of Police Staff & Command (SPSC) (¶73). When Russell expressed interest in attending SPSC, the Department ignored Russell's interest and instead forced (now Chief) Barnes to attend, even though Barnes verbally made it known that he did not want to attend because of prior family commitments. (¶ 78-79). Despite that, the Department encouraged Barnes to attend because it wanted to promote a male. (¶ 78-79). In the same light, the Department promoted Oakley (male) to Commander despite Oakley *never* attending SPSC. (¶ 75). The Department also promoted Marino (male) to Commander even though he also never attended SPSC. (¶ 76). Yet when Russell expressed interest in SPSC, Barnes passed her over giving preference and priority to

males; and although Russell was eventually allowed to attend SPSC, she has still not been promoted to Commander. Indeed, Russell has been passed over for promotion 8 times.

Defendants' promotional process includes several steps, culminating with the Chief awarding "chief's points" which effectively allows the chief to tip the scales in favor of the person the chief wants to promote, rather than the individual who ranks best from the more objective components in the process (testing and interviews). (¶85-86).

On March 2, 2023 Russell filed her EEOC Complaint for discrimination and retaliation. (¶ 93; Ex. 5 – EEOC Charge). The Charge specifically named the individual defendants sued here. Russell was again passed over for promotion in May 2024. (¶ 72). Defendant Barnes told Russell he would review Russell's promotion score with her and how she could improve, but never did so. However, Defendant Barnes sought out Russell's male counterparts to assist and coach them in the promotional process to Commander. This is further evidence of both discrimination and retaliation.

**III.**
**ARGUMENT**

Defendants moved to dismiss the initial complaint (Dkt. 21). Rather than wasting the Court's time with the parties arguing over the appropriate pleading standard, Plaintiff opted to file an Amended Complaint to provide defendants with more detail and specific factual allegations to address Defendants concerns in the hope of avoiding further motion practice. But Defendants are still not satisfied. Plaintiff attaches a comparison of the two complaints demonstrating the additional facts and substantial changes (and effort) that went into the Amended Complaint (Ex. 1). What Defendants are really arguing, in effect,

is that Plaintiff should be required to put all of her proof in the Complaint, so they can skip discovery and proceed to summary judgment. That is not what the rules require.

Notice pleading is still alive and well and a plaintiff need only provide enough details to give the defendant fair notice of the claim and to show that the claim is plausible. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1082-83 (7th Cir. 2008). While complex claims like the antitrust claim at issue in *Bell Atlantic* may require a fuller set of factual allegations to render them plausible, simple claims do not. *Tamayo* at 1082-85 (sex discrimination and Equal Pay Act claims); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 781-82 (7th Cir. 2007) (sex discrimination).

In *Tamayo,* the Seventh Circuit instructs:

> A plaintiff alleging employment discrimination under Title VII may allege these claims quite generally. A complaint need not "allege all, or any, of the facts logically entailed by the claim," and it certainly need not include evidence. *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) (quoting *Am. Nurses' Ass'n v. Illinois*, 783 F.2d 716, 727 (7th Cir. 1986)); see also *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 714 (7th Cir. 2006) ("Federal complaints plead claims rather than facts."). Indeed, "[l]itigants are entitled to discovery before being put to their proof, and treating the allegations of the complaint as a statement of the party's proof leads to windy complaints and defeats the function of Rule 8." *Bennett,* 153 F.3d at 519.
>
> *      *      *
>
> Acknowledging that a complaint must contain something more than a general recitation of the elements of the claim, however, we nevertheless reaffirmed the minimal pleading standard for simple claims of race or sex discrimination. *Concentra*, 496 F.3d at 781-82. Reaffirming our prior holdings in *Bennett*, 153 F.3d at 518, and *Kolupa,* 438 F.3d at 714, we noted:
>
>> "[O]nce a plaintiff alleging illegal discrimination has clarified that it is on the basis of her race, there is no further information that is both easy to provide and of clear critical importance to the claim. Requiring a more detailed complaint in *Bennett* would have replicated the inefficient chase for facts decried in *Bennett* and *Dioguardi*."

4

> *Concentra,* 496 F.3d at 781-82. Even after *Bell Atlantic, Concentra*
> affirmed our previous holdings that, in order to prevent dismissal under
> Rule 12(b)(6), a complaint alleging sex discrimination need only aver that
> the employer instituted a (specified) adverse employment action against
> the plaintiff on the basis of her sex.

*Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (emphasis added). All that is required is enough to give the defendant "sufficient notice to enable [them] to begin to investigate and prepare a defense" to a plausible claim. *Tamayo*, 526 F.3d at 1085." 2010 U.S. Dist. LEXIS 138468, [WL] at * 6-7. Defendants ignore *Tamayo's* instruction, arguing for heightened specificity.  This is the pleading stage, not summary judgment.

Russell has adequately pled each and every claim in her Amended Complaint.  In ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court accepts as true all well-pleaded facts in the complaint and it draws all reasonable inferences in the light most favorable to plaintiff. *Sherwin Manor Nursing Ctr., Inc. v. McAuliffe,* 37 F.3d 1216, 1219 (7th Cir. 1994); *Dehainaut v. Pena,* 32 F.3d 1066, 1070 (7th Cir. 1994). The issue is not whether a plaintiff will ultimately prevail, but whether  she is entitled to offer evidence to support his or her claims. *Pickrel v. City of Springfield,* 45 F.3d 1115, 1118 (7th Cir. 1995) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, (1974)). Complaints are to be read liberally, and the court may grant the motion only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Palda v. General Dynamics Corp.,* 47 F.3d 872, No. 94-1724, slip op. at 4 (7th Cir. Feb. 10, 1995); *Thompson v. Boggs,* 33 F.3d 847, 852 (7th Cir. 1994).

### A.  **Russell Meets the Pleading Standard For All Claims**

In an action under § 1983, courts may not apply a more stringent pleading standard than the notice pleading required by the Federal Rules of Civil Procedure. *Leatherman v. Tarrant County Narcotics Unit,* 113 S. Ct. 1160 (1993). To establish a prima facie case of discrimination under the Equal Protection Clause, a plaintiff must establish that she is a member of a protected class, that she is otherwise similarly situated to members of the unprotected class, that she was treated differently from members of the unprotected class, and that the defendant acted with discriminatory intent based on membership in the protected class. *McNabola v. Chicago Transit Auth.,* 10 F.3d 501, 513 (7th Cir. 1993); *Sims v. Mulcahy,* 902 F.2d 524, 538-539 (7th Cir.), *cert. denied,* 498 U.S. 897 (1990). *Haltek v. Village of Park Forest*, No. 93 C 6700, 1995 U.S. Dist. LEXIS 5543, at *10 (N.D. Ill. Apr. 21, 1995).

A plaintiff does not need to allege a prima facie case of employment discrimination to survive a motion to dismiss. *Etheridge v. Hudson Group (HG) Retail, LLC*, 2022 U.S. Dist. LEXIS 21826, at *9 (N.D. Ill. Feb. 8, 2022); *Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021); *Swanson v. Citbank, N.A.*, 614 F.3d 400, 404-05 (7th Cir. 2010); *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). "A *prima facie* showing will, of course, be needed at summary judgment. At that point, [Plaintiff] would need to come forward with evidence supporting each of the elements of the claim." *Etheridge v. Hudson Group (HG) Retail, LLC*, No. 20-cv-7204, 2022 U.S. Dist. LEXIS 21826, at *9 (N.D. Ill. Feb. 8, 2022).

However, at the pleading stage, the bar is lower. "It is enough for a plaintiff to assert that she was treated worse because of the protected characteristics." *Graham*, 8 F.4th at

627. For example, "[a] plaintiff who believes that she has been passed over for a promotion because of her sex will be able to plead that she was employed by Company X, that a promotion was offered, that she applied and was qualified for it, and that the job went to someone else." *Swanson*, 614 F.3d at 404. In this case, Russell has exceeded that threshold. For example, Russell's Amended Complaint contains facts sufficient to allege that she was employed by the Village of Skokie, that eight (8) promotional opportunities for Commander have occurred from 2017 to preset which Russell interviewed for six (6) times, and that the position was filled by male candidates. (¶69-71).

Fed. R. Civ. P. 8(a)(2) requires only a short and plain statement of a claim showing that the pleader is entitled to relief, in order to give a defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 548 (2007). The plausibility standard of Rule 8 of the Federal Rules of Civil Procedure "is not akin to a probability requirement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Clark v. Law Office of Terrence Kennedy, Jr.,* 709 F. App'x 826, 828 (7th Cir. 2017).

Defendants contend that Russell must plead detailed facts about each claim which is simply not the standard. "Litigants are entitled to discovery before being put to their proof, [because] treating the allegations of the complaint as a statement of the party's proof leads to windy complaints and defeats the function of Rule 8." *Clark,* 709 F. App'x at 828-29; *Bennett v. Schmidt, 153 F.3d 516, 519 (7th Cir. 1998)*.

Contrary to Defendants' contention that Russell failed to plead facts sufficient to establish an employment discrimination claim under *Clark,* the opposite is true. Russell's Amended Complaint is riddled with facts regarding the discrimination suffered by Russell,

when it occurred, and by whom. Under Fed. R. Civ. P. 8, Russell gave Defendants' fair notice of what her claims are and the grounds upon which they rest. *Bell Atlantic,* 550 U.S. at 548.

Defendants essentially argue that at the initial pleading stage, Russell is required to prove that defendants had a discriminatory intent or motive in a disparate treatment claim. This is simply incorrect. This burden need not be met at the pleadings stage, but rather after discovery has concluded. To survive a motion to dismiss under Rule 12(b)(6), it is unnecessary to plead facts that prove intent and causation. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002); *Lucas v. Ferrara Candy Co.,* 2014 U.S. Dist. LEXIS 99600, at *16 (N.D. Ill. July 22, 2014)(J. Lee). Rather, the Seventh Circuit has explained that a minimal pleading standard should apply to claims of disparate treatment under Title VII. *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632-33 (7th Cir. 2013); *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013); *Davis v. Metro. Pier & Exposition Auth.*, 2012 U.S. Dist. LEXIS 91710 at *7 (N.D. Ill. July 3, 2012)(J. Kendall). To prevent dismissal under Rule 12(b)(6), a complaint alleging sex discrimination need only allege that the employer took a specified adverse employment action against the plaintiff on the basis of her sex." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008); *Luevano* at 1028 (7th Cir. 2013)(J. Hamilton). Russell's Amended Complaint is replete with facts which set forth the numerous ways Defendants took adverse employment action against Russell based on her sex (¶ 16, 22-24, 28-30, 37-45, 48-49, 59-61, 68-79, 87, 114-120, 143, 153, 158, 164, 184, 192, 200). Defendants' contention that Russell has not provided any supporting facts regarding her claims is simply untrue. Defendants ignore the lengthy fact portion of Plaintiff's Amended Complaint consisting of ninety (90)

paragraphs which are incorporated by reference in each count, as well as the additional facts set forth in each individual claim.

Russell sufficiently pled that in August 2022 Defendants' subjected Russell to unwarranted criticism and questioning for working out on her lunch break, but male officers were not subjected to the same scrutiny. (¶ 40-43). Similarly, in August 2022 Defendant Barnes instructed Russell to change how Russell accounted for her time spent treating injury-on-duty medical appointments, but did not force Russell's male counterparts to do the same. (¶ 48-49). In October 2023, Defendant Barnes questioned Russell's time for attending training sessions and forced Russell to enter notes for the training into the timekeeping system, but did not question or require the same of males. (¶ 59-61).

Defendants improperly create the false illusion that the reason Russell was instructed to account for her time, paid time off and sick leave was because she was suspected of not properly accounting for that time or because she was abusing the time. This is unsupported and false. The fact of the matter is that Defendants did not require male officers to engage in the same practice and this was a way for Defendants to discriminate against, to harass and to retaliate against Russell. It was disparate treatment. Regardless, those are factual issues to be developed through discovery prior to Summary Judgment and are not properly dispositive at the pleadings stage.

**B. Defendants Confuse The Pleading Requirements At The Initial Pleading Stage Versus Summary Judgment**

Defendants argue that Plaintiff has not adequately pled intent or discriminatory motive. A plaintiff does not need to prove her prima facie case of employment discrimination to survive a motion to dismiss. *Etheridge v. Hudson Group (HG) Retail,*

*LLC*, No. 20-cv-7204, 2022 U.S. Dist. LEXIS 21826, at *9 (N.D. Ill. Feb. 8, 2022); *Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021); *Swanson v. Citbank, N.A.*, 614 F.3d 400, 404-05 (7th Cir. 2010); *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). Plaintiff has specifically alleged that Defendants acted intentionally (¶¶ 107, 121, 133, 176, 190) as well as a multitude of facts from which that inference can be drawn.

### C. <u>Russell Adequately Pled Her Claims</u>

Defendants continuously cite *Twombly* as the pleading standard, yet Russell has far exceeded the requirement of a "short and plain statement of the claim showing that the pleader is entitled to relief" which "give[s] the defendant fair notice of what the… claim is and the grounds upon which it rests." *Conley* v. *Gibson*, 355 U.S. 41, 47 (1957); *Twombly*, 550 U.S. at 555.

Courts may not apply a more stringent pleading standard in § 1983 cases than the notice pleading required by the Federal Rules. *Leatherman v. Tarrant County Narcotics Unit,* 113 S. Ct. 1160 (1993). Russell's Amended Complaint includes allegations that Defendant Village has a custom, policy or practice of discrimination, a history of such discrimination and harassment, and has been the subject of prior gender discrimination complaints (¶ 109-110, 132, 157, 178). Russell also alleges that Defendant Gramins has played a key role in the Defendant Village failing to promote Russell (¶ 20, 34, 190-191) and that Defendants Gramins, Barnes and Baker have refused to promote Russell or recommend her for promotion to the Village Manager (¶87).

10

### 1. Plaintiff's Gender Discrimination & Harassment Claims

Russell's Amended Complaint also sets forth factual allegations of severe or pervasive sexual harassment. The Amended Complaint alleges the harassment was unwelcome, based on her sex, sufficiently severe or pervasive as to alter the condition of her employment, and that there is a basis for employer liability. (¶ 14, 16, 65 - 87, 133-134, 137-138, 143, 154, 163-165). Plaintiff has alleged she is a member of a protected class (female) (¶102), that the Village has a custom, or practice to discriminating against females (¶110) and has done so historically (¶¶ 109, 178-180), that she has been held back, denied training (¶78) that the Department requires employees to obtain before being promoted to the rank of Commander (¶73), while at the same time giving preference to males to receive the training before Plaintiff (¶78) and/or promoting males who did not attend the required training instead of promoting Plaintiff (¶¶ 74 – 77). Plaintiff has been subjected to different treatment than her male counterparts. (¶ 15 – 16(a) through (f), 27-31, 37-39, 57 – 61, 111 – 114, 115-118, 120, 154) and has been denied the same overtime opportunities as her male counterparts. (¶118-119, 143).

In addition, Plaintiff has alleged facts showing that Defendants have intentionally attempted to undermine Plaintiff's promotability by making knowingly false allegations against her (¶¶ 17 - 20, 34, 36, 40 – 41, 80, 87, 112 – 114).

### 2. Plaintiff's Retaliation Claims

Defendants also conflate and confuse Plaintiff's retaliation claims. Plaintiff alleges retaliation based on her gender *and* her complaints. For retaliation claims, "plaintiff need only allege that he engaged in statutorily protected activity and was subjected to an adverse employment action." *Huri v. Office of the Chief Judge of the Circuit Court of Cook*

11

*County,* 804 F.3d 826, 833 (7th Cir. 2015); *Washington v. Magna Exteriors*, 2019 U.S. Dist. LEXIS 172607, at *5 (N.D. Ill. Oct. 4, 2019). In *Washington*, the Court stated "Plaintiff alleges he filed an EEOC race discrimination charge and was fired because of it. Plaintiff has met his pleading requirement for retaliation claims." *Washington,* 2019 U.S. Dist. LEXIS 172607 at 5.

In her Amended Complaint, Russell alleged that she complained about discriminatory treatment (¶ 1, 88 - 92, 146 - 147, 153 - 154, and 163-164) and as a result Defendants took adverse employment actions including but not limited to failure to promote, increased workplace scrutiny, denying benefits which are permitted to male employees who don't complain, and using Russell's duty-related injuries as a factor in performance evaluations. (¶ 36, 87-92, 153-154, 163-164). These materially adverse actions impact Russell's ability to earn a higher-ranking/higher paying job title. She alleges she has been denied overtime opportunities offered to males. Russell has sufficiently pled her discrimination and retaliation claims. Defendants denied her promotion; this alone is a "materially adverse employment action" establishing a retaliation claim.

Defendants argue the timing of the EEOC Charge is insufficient to support the causation nexus but ignore the EEOC process. Plaintiff filed the Charge March 2, 2023. (Ex. 5). But the parties immediately entered into a mediation process with the EEOC, prior to any investigation, throughout the remainder of 2023. The 2024 promotional process started in January 2024 and was proceeding concurrently with the defendants preparing their position statement which they filed March 1, 2024 (Ex. 2) – which was right in the middle of the promotional process. Defendants were aware of Plaintiff's

charge. (¶¶94-95). The Chief then interviewed Plaintiff and other male candidates in March 2024. The same day Chief Barnes interviewed Plaintiff, he recommended two male candidates over Plaintiff to be promoted to the rank of Commander. Given the clear overlap between the EEOC process and the promotional process, and the Chief's decision within days of Defendants filing their EEOC Position Statement, the timing supports Plaintiff's retaliation claim.

### 3. Plaintiff's ADA Retaliation Claim

Similarly, Russell adequately pled her ADA retaliation claim. Russell has alleged that she has a disability and that she was discriminated against because of it. (¶63-64, 87, 170). Plaintiff became disabled due to a duty related injury. (¶62). This required extensive medical treatment and time away from the job. (¶¶62-64). Defendants held Plaintiff's disabilities against her, harassed her, held her medically related time off against her in the annual performance evaluations. (¶65). They also raised it in the promotional process. (¶ 65).

Worse, they retaliated against her be denying her Workers Compensation benefits and paid time off given to Plaintiff's male counterparts. Defendants required plaintiff to use her paid time off (PTO) such as vacation, sick and personal time to attend doctor's appointments and to receive medical treatments. (¶65(d)). They required Plaintiff to use her own insurance, and to pay medical bills out of pocket, rather than having them paid by Workers' Compensation insurance. (¶65(e)). Injured male officers were treated differently (more favorably) (¶¶ 15-16, 23-26, 28-31, 116-118). Defendants also required Plaintiff to notify each of her subordinates when she left the station, while similarly situated males were not required to do this. (¶57-58).

Once again Defendants confuse the pleading requirement with the proof required at the summary judgement stage. Defendants cite to *Furnish* for the requirements for prevailing on an ADA claim, except in that case the Court is reviewing the grant of Summary Judgment – not a Motion to Dismiss. *Furnish v. Svi Systems*, 270 F.3d 445, 448 (7th Cir. 2001).

### 4. Plaintiff's Failure to Promote Claims

Plaintiff has sufficiently pled her failure to promote claim. Plaintiff alleges Defendants promoted males over females including Plaintiff (¶178), and even when females are promoted, they are relegated to more administrative roles. (¶179). Plaintiff has been repeatedly passed over for promotion, even though she receives evaluations rating her performance as "exceptional" and is more qualified than the males who are promoted. (¶¶180 & 183). Plaintiff alleges that she has been undermined in the promotion process (¶181-182) and that her scores were higher when Gramins was not involved in the process. (¶¶189-191).  Despite being better qualified, Plaintiff has been passed over eight (8) times (¶183 – 184), even when Plaintiff had the highest assessment scores. (¶¶ 185-187).

### D. Russell Properly Pled the FLSA, IMWL and IWPCA Claims

### 1. FLSA Claims

Russell pled that she worked in excess of 40 hours a week and was not compensated for at least 70 hours of overtime. (¶ 52-56, 207). Russell also pled that she is not an "exempt" employee. (¶ 205). Russell has met the requirement of alleging that she was an employee eligible for overtime pay and that she actually worked the overtime without proper compensation.

14

FLSA claims generally and in this instance are fairly straightforward and do not require plaintiffs to plead infinitesimal details to render them plausible or provide defendants with fair notice of the claims against them. *Brown v. Club Assist Rd. Serv. U.S., Inc.,* 2013 U.S. Dist. LEXIS 133990 at *6 (N.D. Ill. Sept. 19, 2013) (J. Dow). Furthermore, there is "no requirement . . . that a FLSA plaintiff identify, by date, the specific weeks in which she was undercompensated." *Hancox v. Ulta Salon, Cosmetics & Fragrance, Inc.,* 2018 U.S. Dist. LEXIS 121823, at *3 (J. Tharp)(N.D. Ill. July 20, 2018); *Divine v. Volunteers of America of Illinois*, 319 F. Supp. 3d 994, 1000 (Castillo, J.)(N.D. Ill. 2018).

 Defendants cite *Trujillo* which states that a Plaintiff must plead more details beyond "having worked more than 40 hours without overtime" to state a claim under the FLSA. *Trujillo v. Mediterranean Kitchens, Inc.,* 2017 U.S. Dist. LEXIS 106449, at *3 (N.D. Ill. July 11, 2017) (J. Tharp).  Plaintiff here pled all that is required.

Defendants ignore that *Trujillo* instructs that each and every date and time need not be plead. Under *Trujillo,* alleging the frequency that Plaintiff worked overtime "routinely" or "frequently" is enough. *Trujillo* at *3-4. Other Courts, including the Eleventh Circuit and several judges in this district have found that indicators of frequency -- such as that a defendant "repeatedly" or "routinely" worked overtime -- are sufficient. *Secretary of Labor v. Labbe*, 319 F. App'x 761, 763 (11th Cir. 2008); *Hughes v. Scarlett's G.P., Inc*., 2016 U.S. Dist. LEXIS 103880 at *2 (N.D. Ill. Aug. 8, 2016) (J. Eve); Sanchez v. Haltz Const., Inc., 2012 U.S. Dist. LEXIS 537 at *3 (N.D. Ill. Jan. 4, 2012) (J. Grady).  *See also*; *Trujillo*, 2017 U.S. Dist. at *3 (N.D. Ill. July 11, 2017) (J. Tharp). Plaintiff's allegations in this case more than satisfy Plaintiff's burden. (¶¶52-56, ¶¶205-207)

Indeed, Russell has met the pleading requirement – particularly at the pleading stage. Russell alleges that Plaintiff is non-exempt (¶205); there is a policy of paying overtime compensation (¶ 206), that Defendants have failed and refused to pay at least 70 hours of overtime (¶207), and that she is required to work on nights and weekends but is not compensated for that time (¶ 51-56, 208). Specifically, Russell alleges receiving calls from Officer Odeshoo once or twice a night while off duty (¶54); is "typically" required to take calls off-duty (¶53 & 55) and then goes further by identifying the types of calls, the subject matter and who the call is from (¶55 (a) – (k)), and alleges she has not been allowed to be compensated for that time (¶56). Therefore, Russell has pled more than enough facts to place defendants on notice of the overtime claim they face.

Defendants argue that they don't know when the overtime was worked or submitted but this argument misses the point. Plaintiff specifically alleges the Department has a policy of paying overtime (¶206). The point is that then Deputy Chief Barnes told (ordered) Plaintiff not to submit overtime requests for taking calls and texts outside of her normal shift. (¶16, 56; Ex. 5 – EEOC Charge). This, coupled with Barnes' 2022 accusations, informed Plaintiff that she could not submit overtime hours to be compensated for the activities delineated in detail in ¶¶'s 55 (a) through (k) of the complaint. The complaint alleges "Barnes effectively required Plaintiff to work overtime, but Plaintiff is not allowed to be compensated for that time." (¶56).

When Defendants refuse to pay Plaintiff for working overtime, they face two types of claims – an overtime violation for requiring or permitting Plaintiff to work hours in excess of 40 in a workweek as *well as* a minimum wage claim because they paid her *nothing* for

16

the hours she worked but for which she was not paid. Working beyond 40 hours in a workweek triggers the FLSA compensation requirements. 29 C.F.R. 785.11.

### 2. **IMWL Claims**

Similarly, the IMWL claims are properly pled. The IMWL parallels the FLSA, and the same legal analysis ultimately applies to both claims. See *Silver v. Townstone Fin., Inc*, 2015 U.S. Dist. LEXIS 32857 at *1 (N.D. Ill. Mar. 17, 2015) ("The FLSA and IMWL ... are analyzed using the same legal framework."); *Knapp v. City of Markham*, 2011 U.S. Dist. LEXIS 87985 at *8 (N.D. Ill. Aug. 9, 2011) (J. Chang) ("Claims brought under the FLSA and IMWL are evaluated using the same general analysis.").

### 3. **IWPCA Claim**

The IWPCA protects a worker's right to receive compensation to which they are entitled. If the worker is not paid wages to which she is entitled, the IWPCA provides remedies over and above those under the FLSA and IMWL. Specifically, the IWPCA provides for an award of damages of 5% for each month following the date the wages should have been paid.

Defendants' argument borders on specious. Defendants know they pay sergeants overtime, just as they do other police officers. The department's policy (¶ 206) is they pay officers overtime – as evidenced in a sampling of Plaintiff's paychecks. These checks and the Village Compensation Policy (Exs. 3 & 4) show the agreement to pay. Paragraph 206 in the complaint alleges a departmental policy to pay overtime – evidencing the "agreement" the IWPCA requires. (¶206). As with her FLSA and IMWL claims, Plaintiff's allegations are sufficient to support an IWPCA claim at the pleading stage.

**IV.**
**<u>CONCLUSION</u>**

WHEREFORE, Plaintiff Melissa Russell respectfully requests that this Court deny Defendants' Motion to Dismiss Plaintiff's Amended Complaint. If the Court requires additional facts on any claim, Plaintiff respectfully requests leave to amend.[2]

Respectfully submitted,
HUNT LAW, P.C.

/s/ *Keith L. Hunt*
An Attorney for Plaintiff

Keith L. Hunt
Delaney A. Hunt
Hunt Law, P.C.
2275 Half Day Road
Suite 126
Bannockburn, IL 60015
(312) 558-1300 (p)
(312) 558-9911 (f)
khunt@huntpclaw.com
dhunt@huntpclaw.com

---

[2] This will be the first time the Court has considered the parties arguments requiring dismissal.

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing document was served on all counsel of record through the Court's CM/ECF electronic filing system on December 13, 2024.

_Keith L. Hunt (electronic signature)_