

Yvette Heintzelman
T (847) 971-0398
F (312) 985-5585
Email: yheintzelman@clarkhill.com
Lidia Koelbel
Email: lkoelbel@clarkhill.com

Clark Hill
130 E. Randolph Street, Suite 3900
Chicago, Illinois 60601
T (312) 985-5900
F (312) 985-5999

March 1, 2024

ELECTRONICALLY FILED

Katarzyna Hammond
EEOC
230 S. Dearborn Street
Chicago, IL 60604
(800) 669-4000

Re: Village of Skokie Position Statement; Melissa Russell – EEOC Charge of Discrimination No. 440-2023-04784

Dear Ms. Hammond,

I am writing on behalf of the Village of Skokie ("Village") in the above-referenced charge of discrimination and retaliation based on race, color, sex, and disability filed against it by the Complainant, Melissa Russell ("Complainant"). Please accept this letter as the Village's position statement in the instant case.[1]

## STATEMENT OF THE CASE

Complainant filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging that the Village discriminated and retaliated against Complainant based on her race, color, sex, and disability. Complainant did not identify the protected conduct that formed the basis for the retaliation claim. The Village denies each of Complainant's allegations. Indeed, Complainant, who was hired in 2004 as a sworn police officer does not believe that certain work policies apply to her. She has difficulty maintaining a cohesive work relationship with her peers and certain co-workers. When she is at work, and working by herself, she is productive. However,

---

[1] Inclusion of information in this position statement does not constitute a waiver of any objection or privilege the Village may have in response to future discovery or information requests, or to the introduction of evidence in this or any subsequent proceeding; nor does it constitute a waiver of any objection as to timeliness of the charge or any other legal argument the Village may assert in the future. Furthermore, this position statement, although believed to be true and correct in all respects, does not constitute an affidavit or admission, and is not intended to be used as evidence in any court or other proceeding. The Village retains its right to present new, revised, or additional facts or arguments based upon subsequently acquired information, to present different or additional arguments on its behalf, or to respond to any new issues or evidence that may arise.

March 1, 2024
Page 2

a requirement for any supervisory position is good communication skills and the ability to work well with others, particularly the individuals reporting to you. For every complaint Complainant alleged in the past, an inquiry was conducted and a resolution was reached. Complainant is a Caucasian female who is currently employed as a sergeant with the Village of Skokie Police Department. She has not been discriminated against based on any protected category. Respondent respectfully requests that the charge be dismissed in its entirety.

## FACTUAL BACKGROUND

### A. Village of Skokie Police Department

The Village of Skokie Police Department ("Department") is committed to partnering with the community in its professional delivery of law enforcement services. The Department understands and values that the authority given to it is only effective if its officers are valued, trusted, and respected by the community they serve. The Department is charged with ensuring the safety and security of all who live, work, and visit the Village. The Department holds high expectations for itself and its work and understands the need for open communication internally and externally. The mission of the Department is to prevent crime, protect life and property, enforce the law, and preserve order while protecting the rights of all people and doing so with the highest of ethical and professional standards. The Department's address is 7300 Niles Center Rd., Skokie, IL 60077. The Department employs approximately 155 employees as of 2022.

The Village is an equal opportunity employer and makes all employment decisions without regard to race, color, religion, creed, national origin or ancestry, sex, age, physical or mental disability, veteran status, genetic information, or any other protected class characteristic under federal, state, or local law. The Village does not tolerate any discrimination or retaliation and is governed by a collective bargaining agreement between the Village of Skokie and the Illinois Fraternal Order of Police, Labor Council, Representing Skokie Police Officers, 2022-2025, which prohibiting discrimination of employees. *See* Collective Bargaining Agreement, attached as **Exhibit A**. The Village also has an employee handbook that prohibits discrimination and harassment. The Village's policies include robust reporting and investigation procedures. *See* Employee Handbook, attached as **Exhibit B**. Finally, the Village provides anti-harassment training to all of its employees on an annual basis. *See* Training Attendance Documents, attached as **Exhibit C**.

Police departments are quasi-military organizations; public safety depends upon good order and discipline. *Kokkinis v. Ivkovich*, 185 F.3d 840, 846 (7th Cir. 1999). "Because police departments function as paramilitary organizations charged with maintaining public safety and order, they are given more latitude in their decisions regarding discipline and personnel regulations than an ordinary government employer." *Id.* at 845 (citing *Tindle v. Caudell*, 56 F.3d 966, 971 (8th Cir.1995)).

**EXHIBIT 2**

March 1, 2024
Page 3

### B. Complainant's Employment

Complainant was hired by the Department on June 29, 2004, as a police officer. She was promoted to the rank of Sergeant on September 1, 2014. Complainant is currently assigned to the Programs and Planning Unit where she oversees the management of the following: animal control, bike unit, Body-Worn Camera Evidence system website, drones, evidence technicians, field training, range, the Sex Offender Registry, truck enforcement, fitness room, traffic grants, special event planning, red light cameras, crime analysis, and tasers. She also provides defensive tactics training, is responsible for the staff and action plan for the 4th of July Parade and fireworks, and is the Peer Support Program Manager for the Peer Support Program. Complainant has administrative access to the scheduling system, PACE. Administrative access allows Complainant to input and edit her schedule. She also has access to more information than the average user. Only certain Department supervisors have this type of access.

Complainant suffered on-duty injuries on July 6, 2016, and September 16, 2020. The 2016 injury was to her shoulder during a defensive tactics training class. The 2020 injury was to her eye and occurred while she was on the range. She received some burns when a firearm casing became lodged behind her protective eyeglasses. She has been receiving treatment, including surgery for that injury for several years. In addition, Complainant has a non-work-related injury to her foot that has required treatment and surgical intervention. Finally, upon information and belief, Complainant also has some mental health issues for which she is seeking treatment.

With all of her injuries and medical treatments, Complainant has been very secretive. She does not inform her staff leaving them uninformed of where she is. In turn, her lack of communication causes uncertainty and strife among her staff. It is not apparent to the Village for which injury she is seeking treatment. Some injuries are work-related and may provide for TTD benefits and others are non-work-related and require the use of benefit time. It is unknown whether Complainant needs an accommodation for any ongoing reasons because Complainant has not provided information. When she has asked for any accommodations, she has received them. The Village accommodated Complainant by allowing her to attend weekly medical appointments, for work- and non-work-related injuries, during work hours. As a result, she has been effectively present at the Village's premises working part-time hours but receiving her full salary. Further, because Complainant is a supervisor and has access to the Department's schedule, she was told to and can schedule herself off at any time. During days when Complainant had to attend physical therapy, her supervisor, Commander David Pawlak ("Cmdr. Pawlak") permitted Complainant to wear workout clothes, a preferential treatment no one else received. When there were complaints about the preferential treatment Complainant was receiving, Chief Brian Baker ("Chief Baker") allowed her special treatment to continue.

As one can imagine, this preferential treatment created animosity among Complainant's co-workers as no one knew when she would be off, where she was going, or when she would return. The situation has been further aggravated as Complainant comes to work in casual clothes and/or gym shoes while her co-workers remain in uniform. She has also been accommodated by

**EXHIBIT 2**

March 1, 2024
Page 4

working from home on grant projects. Something her peers are not allowed to do.[2] The complaints from other employees included complaints that Complainant was unavailable, did not provide direction, was intolerant, and Cmdr. Pawlak, indeed, did receive complaints from co-workers about misuse of time. Those complaints were investigated and, while co-workers were not told why Complainant was able to leave and return on a random basis, the complaints were unfounded.[3]

Complainant did not receive direction well and felt she should not have to report when she was on-duty or off-duty having to leave to attend medical appointments. Complainant had a unique schedule, and with her administrative access, she did not have to request approval to enter overtime. Therefore, it was difficult to track when Complainant would be at work to provide guidance and assistance to her direct reports. She kept entering her work hours from home while she engaged in administering grants. She then gave herself hire back time as overtime and informed Cmdr. Pawlak. However, Chief Baker was unaware that Complainant was entering her own time while working from home. When Chief Baker and then Deputy Chief Barnes learned what Complainant was doing, Chief Baker determined that she could not work overtime while at home. Other officers were required to work overtime while physically in the office. Chief Baker determined that this was not a reasonable accommodation, nothing prevented Complainant from coming to work and her self-created accommodation of working from home was creating dissension amongst the other employees. Accordingly, Complainant was required to work any overtime while physically at the Department. (It is important to remember that none of her injuries, work-related or non-work-related, prevent her from physically coming to work.) This is the same requirement applicable to all other employees. When Cmdr. Pawlak told Complainant that she needed to work her overtime in the office on the weekends, like the rest of the staff, she felt persecuted. Yet, she received no discipline, and all other employees were required to perform overtime work at the Police Department.

Complainant had a close friendship with Commander Tim Gramins ("Cmdr. Gramins") when they were both patrol officers and sergeants. Cmdr. Gramins was promoted to the commander rank, a rank above Complainant, on December 11, 2019. When this occurred, Complainant found it difficult to work collaboratively or effectively communicate with her former friend. For example, on or about February 22, 2021, Cmdr. Gramins asked Complainant to sign firearms paperwork, also referred to as a Red Dot Form, in the normal course of Department operations. This request caused Complainant to become defensive and argumentative. On or around March 5, 2021, Cmdr. Gramins ordered an Evidence Technician to process a piece of evidence. The Evidence Technician was working light duty in Complainant's unit. In what appeared to be a power struggle, Complainant alleged Cmdr. Gramins was violating the Evidence Technician's light duty and reported Cmdr. Gramins to Deputy Chief Paul Weinman ("D.C. Weinman"). Shortly thereafter, on or about April 13, 2021, Cmdr. Gramins asked Complainant

---

[2] Complainant was not reprimanded for working out during her lunch. When her supervisor received complaints from others alleging Complainant was working out in excess of her allotted lunch time, Cmdr. Pawlak looked into the allegations and determined Complainant was not exceeding her allotted lunch time.

[3] With respect to her shoulder injury, the Village determined that Complainant reached maximum medical improvement and therefore terminated any additional medical benefits. That issue is pending before the Illinois Workers Compensation Commission. The EEOC does not have any jurisdiction to resolve that dispute.

**EXHIBIT 2**

March 1, 2024
Page 5

how a certain project was going, and Complainant felt abused and immediately reported Cmdr. Gramins' questions to Cmdr. Pawlak that same day. Upon looking into the conduct, Cmdr. Pawlak did not find any inappropriate or abusive conduct toward Complainant by Cmdr. Gramins. Rather, Cmdr. Gramins, as a supervising officer, was properly exercising his authority when asking Complainant to provide information or perform duties that were within her job description. Undeterred, Complainant continued to complain about everything including a complaint that Cmdr. Gramins "looked" in the direction of her office whenever he was at the coffee bar which was next to Complainant's office.

On or about August 20, 2021, Complainant alleged to Cmdr. Pawlak that she was being harassed and discriminated against and arbitrarily receiving false complaints. She further alleged that she was experiencing emotional and physical pain due to the harassment and that the harassment was impairing her ability to get promoted. Complainant accused her co-workers, and her supervisors looking into her co-workers' complaints, of harassment when she was accused or questioned for not being at work when scheduled. Her unexplained absences in the minds of her co-workers gave the appearance of improper timekeeping and other officers and sergeants reported them. Further, the Department's requirements of Complainant were the same requirements required of all individuals who are requesting accommodations or working an irregular or erratic schedule. Complainant was being treated the same as everyone else and she was upset that she was not getting preferential treatment of being allowed to do whatever she wanted whenever she wanted.

Complainant also contends that she was not selected for the Northwestern School of Police Staff & Command program and that less qualified individuals were selected. The Northwestern School of Police Staff & Command (SPSC) is an intensive leadership and management education program that helps prepare experienced law enforcement professionals for success in senior command positions. Staff & Command is a specialized program utilized by law enforcement agencies throughout the U.S. and around the world. Staff & Command provides leadership and management teams with training on how to be an effective and successful leader. Through an innovative combination of academic principles with practical applications, the 10-week SPSC curriculum zeroes in on such critical command-level content as planning and policies, media relations, organizational behavior, budgeting and resource allocation, human resources, contemporary policing, and more.

There are limited spaces available every semester to attend SPSC. In addition, the Department only sends one individual at a time because the individual is absent from work for an extended period while participating in SPSC. While Complainant did ask to attend SPCS several times, she was not selected because other employees who either had more seniority or who had recently been promoted were better candidates for participation in SPSC at the time including, now Chief Jesse Barnes ("Chief Barnes"). Complainant scheduled herself for SPSC for the September 25, 2017 to December 8, 2017 session. Chief Barnes who had more seniority and more time on the job inadvertently bumped her from attending when he requested to attend at the same time as Complainant. Chief Barnes was selected because he was already a sergeant since 2011 and had not yet attended SPSC. Other factors affected who attended SPSC. There were instances in which

**EXHIBIT 2**

March 1, 2024
Page 6

there was availability for Complainant to participate but she was on leave of absence or otherwise unable to attend. Other male officers were also passed over and not allowed to attend SPSC at the time they requested to attend.

Complainant was selected to attend SPSC from January 10, 2022, through March 25, 2022. Once Staff & Command was completed, Complainant was scheduled for a month of vacation. She converted that month of vacation to Emergency Leave. Complainant claimed she received some sort of treatment during this time. She provided a doctor's note for the approval of Emergency Leave but has not informed anyone what type of treatment she received or if she needed an accommodation. There was no visible disability and Complainant did not request any accommodation. However, Complainant once again felt that she was being picked on.

Complainant also complained that she was not properly paid for the time she was at Staff and Command. The allotted work time was a forty-hour workweek for the weeks she was at SPSC. That time frame was designed to complete all the work including classwork and homework. Complainant had spoken to another individual who attended previously, and that individual erroneously reported that he received overtime. When the Department made an inquiry into that individual's claim that he was paid overtime, he recanted after checking his records.

Despite all of the accommodations given to Complainant, she has described herself as being miserable at work. The Department even arranged for mediation on December 8, 2022, to help address Complainant's complaints. When the mediator's conclusions and recommendations were communicated to Complainant, Complainant felt that her complaints of harassment and discrimination were not considered.

Complainant's every complaint was investigated, and appropriate remedial measure have been put in place when necessary. But the reality is that Complainant is not happy at work and does not like several of her co-workers. She has not been happy at work in a long time, in fact, several examples she uses are past the statute of limitations. She has stated that she is not at work "to make friends" and that she does not want to be disturbed on her days off. It is apparent from her actions that she held a grudge against her "friend" Cmdr. Gramins when he surpassed her in rank. As a result of her apparent unexplained absences, poor working relationships and communication skills, and lost productivity, Complainant is not accessible or responsive and not otherwise qualified for a leadership role at this time. Lastly, despite requesting and receiving accommodations for several years, it was not until March 22, 2023, that the Department finally received a request for light work accommodation. Despite the lack of support for her accommodation requests, the Department again provided the accommodation. *See* Attending Physician's Return to Work Recommendations, attached as **Exhibit D**.

## STATEMENT OF POSITION

**A. Complainant Was Not Subjected To Discrimination Based On Her Race Or Color.**

**EXHIBIT 2**

March 1, 2024
Page 7

A claim of disparate treatment is examined under a three-part analysis. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). For Complainant to prevail, she must first establish a *prima facie* case of discrimination by presenting facts that, if unexplained, reasonably give rise to an inference of discrimination, i.e., that a prohibited consideration was a factor in the adverse employment action. *Morton P., Complainant, v. Alejandro N. Mayorkas, Sec'y, Dep't of Homeland Sec. (Transp. Sec. Admin.), Agency*, EEOC DOC 2022000051, 2023 WL 2367430, at *3 (Feb. 23, 2023) (finding that employer articulated a legitimate, nondiscriminatory reason for terminating the employee who could not demonstrate proficiency for his duties during his trial period).

To establish a *prima facie* case of disparate treatment discrimination based upon race or disability, the complainant generally must prove the following elements: (1) the complainant was a member of a protected class; (2) the complainant suffered an adverse employment action; and (3) the complainant was treated differently than similarly situated employees outside her protected class, or there is some other evidentiary link between membership in the protected class and the adverse action. *Hall v. U.S. Postal Service*, EEOC Appeal No. 0120080536, 2009 WL 2135152, at *3 (July 10, 2009); *Sadie M., Complainant, v. Janet L. Yellen, Sec'y, Dep't of the Treasury, Agency*, EEOC DOC 2022002454, 2023 WL 5275257, at *2 (July 20, 2023).

Here, Complainant does not provide a shred of evidence that she suffered any discrimination based on her race or color. At the outset, reasonable minds would agree that Complainant did not suffer a materially adverse employment action. Although adverse employment action is not rigidly defined, most courts have held that in the discrimination context, it involves, at a minimum, a "material adverse change" in the compensation, terms, conditions, or privileges of employment. 42 U.S.C. § 2000e-2(a)(1); *see McDonnell Douglas*, 411 U.S. at 802; *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). Here, nothing happened to Complainant. She has continued in her position. She has the ability to work overtime and she has received every accommodation she requested.

The underlying facts and documentation support the conclusion that the Complainant was not treated differently because of her race or color. Some would argue that as a Caucasian, white, female police officer, Complainant is not a member of a protected race or color class. Additionally, she received no adverse employment action. Complainant does not provide any information on employees who were similarly situated outside her protected class of Caucasian and white who were treated more favorably than her. Complainant was bypassed for the Staff and Command training because someone with more seniority than Complainant was eligible to go first. The same is applied to all applicants and the same thing has happened to male police officers. Complainant does not provide any information on any promotion she was interested in pursuing. She does not state whether she submitted applications for any such promotions. Further, Complainant does not articulate who received those promotions for which she was passed over or why the decision was allegedly made based upon a protected characteristic or category.

Complainant was not treated less favorably and in fact, was treated better than other employees. She received permission to come to work out of uniform. The Department tolerated her erratic schedule and lack of communication about her whereabouts during worktime and when she had to modify her schedule. Complainant had communication issues with her staff. No

**EXHIBIT 2**

March 1, 2024
Page 8

comparator was treated more favorably than the Complainant. Complainant does not substantiate her bare assertions with facts that support her allegations of discrimination based on her race or color.

### B. Complainant Was Not Subjected To Discrimination Based On Her Sex.

An individual may establish a *prima facie* case of discrimination based on sex regarding her removal by showing the following: 1) she was a member of a protected class; 2) she was qualified for the job she was performing; 3) she was meeting the normal requirements of the position; 4) she was removed; and 5) she was singled out for removal while similarly situated employees not of her protected class were retained. *Wilkinson v. Bruce Babbitt, Sec'y, Dep't of the Treasury, Agency*, EEOC DOC 03930070, 1993 WL 1509235, at *3 (Apr. 26, 1993) (citing *Flowers v. Crouch-Walker Corp.*, 552 F.2d 1277, 1282 (7th Cir. 1977).

Complainant failed to present evidence sufficient to establish a *prima facie* case of discrimination based on sex. Complainant was not removed from her position, nor did she suffer any adverse action from the Department. Complainant also failed to show that she was singled out for any adverse action while male employees who held similar positions and who had committed similar actions received any preferential treatment. Complainant introduced no other evidence from which an inference can be drawn that she suffered adverse actions based on her sex.

### C. Complainant Was Not Subjected To Discrimination Based On Her Disability.

Under the Commission's regulations, an agency may not discriminate against a qualified individual based on disability and is required to make reasonable accommodations to the known physical and mental limitations of an otherwise qualified individual with a disability unless the agency can show that reasonable accommodation would cause an undue hardship. *See* 29 C.F.R. § 1630.2(o), (p). To establish that Complainant was denied a reasonable accommodation; Complainant must show that: (1) she is an individual with a disability, as defined by 29 C.F.R. § 1630.2(g); (2) she is a "qualified" individual with a disability under 29 C.F.R. § 1630.2(m); and (3) the agency failed to provide her with a reasonable accommodation. *Hermila B., Complainant, v. Sonny Perdue, Sec'y, Dep't of Agric. (Food Safety & Inspection Serv.), Agency.*, EEOC DOC 0120152436, 2017 WL 5988786, at *2 (Nov. 22, 2017) (citing EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act. EEOC Notice No. 915.002 (Oct. 17, 2002) ("Enforcement Guidance on Reasonable Accommodation")).

It was not apparent that Complainant has a disability, and she did not inform anyone that she had a qualifying disability until March 22, 2023. Further, there is no evidence of Complainant requesting a reasonable accommodation until that date. Complainant requested light duty and received it. If any other accommodations are necessary, Complainant has not communicated what those are. However, even before making the request, Complainant received the accommodation of an erratic work schedule. Complainant received light duty for various reasons for work injuries as well as other injuries, including intermittent light duty. Nothing prevents Complainant from coming to work so she does not qualify for work-from-home accommodations. Complainant

EXHIBIT 2

March 1, 2024
Page 9

received all that she was entitled to and has not been discriminated against based upon any alleged disability.

### D. Complainant Was Not Subjected To Retaliation.

To establish a *prima facie* case of retaliation, Complainant has to show that: (1) she engaged in a protected activity; (2) the Department was aware of the protected activity; (3) the Department took an adverse action against Complainant; and (4) there is a nexus between the protected activity and adverse action. *See Hazel M. Whitmire, Complainant, v. F. Whitten Peters, Sec'y, Dep't of the Air Force, Agency.*, EEOC DOC 01A00340, 2000 WL 1489753 (Sept. 25, 2000) (finding that employee failed to establish by a preponderance of the evidence that delivering a transfer letter in private was reprisal for discrimination).

Complainant was not engaged in any protected activity. She did not report any discrimination based on race, color, sex, or disability to anyone at the Department or any agency at any time before she filed these charges. Complainant merely alleged general frivolous harassment and discrimination when she was made to account for her whereabouts during work time. She did not report discrimination because there was no conduct based upon a protected category to report. Again, Complainant did not receive any adverse action. Other than a litany of inconveniences and refusal of preferential treatment, Complainant fails to submit any evidence supporting any of the allegations Complainant makes.

### CONCLUSION

For the reasons discussed above in this position statement, Complainant was not discriminated against based on her race, color, sex, or disability or retaliated against at any time during her employment with the Department.

Accordingly, the Village respectfully requests that a no-cause determination be issued as expeditiously as possible.

Respectfully submitted,

VILLAGE OF SKOKIE

*Yvette Heintzelman*

Yvette Heintzelman
One of Its Attorneys

YH:lk

cc.  Lidia Koelbel

**EXHIBIT 2**