UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MELISSA RUSSELL ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 24-cv-5197 |
| v. ) | |
| ) | Judge April M. Perry |
| ) | |
| VILLAGE OF SKOKIE; CHIEF ) | |
| BRIAN BAKER, in his individual capacity; ) | |
| CHIEF JESSE BARNES, in his individual ) | |
| capacity; and COMMANDER TIMOTHY ) | |
| GRAMINS, in his individual capacity, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Melissa Russell ("Plaintiff") brings this employment discrimination case against the Village of Skokie (the "Village") and command staff from the Skokie Police Department ("SPD"), including Chief Brian Baker, Chief Jesse Barnes, and Commander Timothy Gramins. Plaintiff asserts claims of gender discrimination in violation of 42 U.S.C. § 1983 ("Section 1983") and Title VII of the Civil Rights Act of 1964 ("Title VII") (Counts I and II), sexual harassment in violation of Section 1983 and Title VII (Counts III and IV), retaliation in violation of Section 1983, Title VII and the Americans with Disabilities Act ("ADA") (Counts V, VI, and VII), failure to promote in violation of Section 1983 and Title VII (Count VIII and IX), and wage violations under the Fair Labor Standards Act ("FLSA"), Illinois Minimum Wage Law ("IMWL"), and the Illinois Wage Payment and Collection Act ("IWPCA") (Counts X, XI, and XII). Doc. 27 ¶¶ 101-218. *Id.* Defendants have moved to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 34. For the following reasons, the motion to dismiss is granted in part.

## BACKGROUND

As is appropriate in deciding a motion to dismiss, the Court accepts the facts in Plaintiff's complaint as true and draws reasonable inferences in her favor. *See Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

According to the complaint, Plaintiff is a female who was employed at all relevant times by the SPD and currently holds the rank of Sergeant. Doc. 27 ¶¶ 11-13. Brian Baker and Jesse Barnes are the former and current Chief of Police, respectively. *Id.* ¶¶ 4-5. Timothy Gramins is a Commander but is not Plaintiff's supervisor. *Id.* ¶¶ 6, 37.

Plaintiff alleges that she qualifies as disabled within the meaning of the ADA due to a severe injury to her neck and shoulder that she incurred in the line of duty, as well as an eye injury arising from a firing range training exercise. *Id.* ¶¶ 62-64. According to Plaintiff, Chief Baker and Chief Barnes made her use vacation time and sick time for procedures and appointments related to these injuries. *Id.* ¶ 16. Defendants also allegedly required Plaintiff to go to medical appointments and physical therapy sessions without overtime compensation, despite the fact that male officers received overtime pay for similar appointments. *Id.* ¶¶ 22-23. Plaintiff further alleged that Defendants denied all workers compensation claims and emergency leave requests related to her work-related injuries. *Id.* ¶¶ 25-27, 33.

Plaintiff additionally alleges that Defendants refused to pay her overtime for work related to Plaintiff's assignment with the SPD's Programs and Planning unit ("P&P"). *Id.* ¶ 50. In September 2022, Chief Barns instructed Plaintiff that as a member of P&P, she is required to answer communications outside work hours but is not allowed to log or seek compensation for that time. *Id.* ¶ 51. Plaintiff claims that she was expected to respond at least once or twice a night

to a wide range of issues. *Id.* ¶ 54. Examples include scheduling requests (*e.g.,* officers calling in sick), communications with evidence technicians, information about lost and found items, IT issues, calls from vendors regarding red light cameras, and inquiries about fleet vehicles and body camera systems. *Id.* ¶ 55.

Plaintiff also alleges being passed over for promotion eight times, despite exceptional performance reviews. *Id.* ¶ 71. The promotion process includes input from the promotability committee (made up of Deputy Chiefs and Commanders), Chief, and Village Manager. *Id.* ¶¶ 80-86. Specifically, each applicant receives a score from the committee, which is then given to the Chief, who ultimately recommends promotions to the Village Manager. *Id.* ¶¶ 83, 85. Although the Village Manager makes the final decision, he or she routinely accepts the Chief's recommendation. *Id.* ¶ 86. Plaintiff alleges that in 2022, she received the highest assessment score from the promotion committee, but a male with a significantly lower assessment score was promoted instead. *Id.* ¶¶ 185-186. Plaintiff further alleges that she consistently received high assessment scores, but males were consistently promoted ahead of her. *Id.* ¶¶ 67, 184. Plaintiff claims that Commander Gramins was on the committee and thwarted her promotion by criticizing Plaintiff for things like working remotely, spending too much time working out, inappropriately handling firearms, being out of uniform while on duty, and taking too much overtime. *Id.* ¶ 16, 18, 19, 41. Plaintiff claims that this criticism was a decisive factor in her not being promoted. *Id.* ¶¶ 17, 20. Plaintiff was most recently passed over for promotion in May 2024. *Id.* ¶ 72.

Plaintiff's complaint further alleges that she was subjected to more onerous standards than other officers. For example, in August 2022, Plaintiff was disciplined for wearing street clothes at work. *Id.* ¶ 44. That same month, Chief Barnes instructed Plaintiff to write her times of

3

departure and return on a white board whenever she left the building. *Id.* ¶¶ 46, 58. In October 2023, Chief Barnes required Plaintiff to manually enter notes for training days. *Id.* ¶ 60. In August 2022, Plaintiff was criticized by Commander Gramins for supposedly working out during her lunch break. *Id.* ¶¶ 40-42. Plaintiff asserts that no similarly situated males have been criticized or disciplined for similar behavior. *Id.* ¶¶ 43, 45, 58, 61.

Plaintiff claims that she complained on numerous occasions about harassment, discrimination, and the fact that she was not promoted. *Id.* ¶¶ 88-89. Plaintiff claims that the SPD failed to document her complaints or investigate and take action against her harassers. *Id.* ¶¶ 90-91. Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on March 2, 2023. *Id.* ¶ 93. The EEOC issued a right-to-sue letter on March 25, 2024. *Id.* ¶ 100. Plaintiff filed this action on June 21, 2024. Doc. 1.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a case may be dismissed when a plaintiff fails to state a claim upon which relief can be granted. A 12(b)(6) motion is a challenge to the sufficiency of a complaint, not its merits. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering such a motion, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *See Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a motion to dismiss, a plaintiff need only include "a short and plain statement of a claim that is plausible on its face and entitles them to relief." *Roldan v. Stroud*, 52 F.4th 335, 339 (7th Cir. 2022). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the

4

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Threadbare recitals of the elements of a cause of action and allegations that are merely legal conclusions are not sufficient to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678. The law is clear that a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## ANALYSIS

### A. Section 1983 Claims

Counts I, III, V, and VIII are brought against Defendants pursuant to Section 1983. A cause of action may be brought under Section 1983 against "[e]very person who, under color of any statute, ordinance, regulation, custom or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

#### i. Section 1983 Claims Against the Village

The Court first addresses whether Plaintiff has sufficiently alleged a Section 1983 claim against the Village. Section 1983 provides a civil remedy against any "person" who violates a plaintiff's federal civil rights while acting under color of state law. 42 U.S.C. § 1983. The Supreme Court has held that municipalities are "persons" who may be sued under Section 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). "Municipalities may be sued only for their own violations of federal law, however, and cannot be held vicariously liable for the constitutional torts of their employees." *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 523 (7th Cir. 2023). For a Section 1983 claim against a municipality to survive a

motion to dismiss, a plaintiff must plead facts that "plausibly suggest that: (1) she was deprived of a constitutional right; (2) the deprivation can be traced to some municipal action (i.e., 'a policy or custom'), such that the challenged conduct is properly attributable to the municipality itself; (3) the policy or custom demonstrates municipal fault, i.e., deliberate indifference; and (4) the municipal action was the moving force behind the federal-rights violation." *Id.* at 524 (internal quotations omitted). Three types of municipal actions support liability: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Id.*

Plaintiff's complaint alleges a widespread custom or practice of discrimination.[1] But to survive a motion to dismiss, Plaintiff must do more than repeat the applicable legal standard: Plaintiff "must allege facts permitting a reasonable inference that the practice is widespread and that the specific violations complained of were not isolated incidents." *Id.*; *see Wilson v. Cook Cnty.*, 742 F.3d 775, 780 (7th Cir. 2014) ("Although this court has not adopted any bright-line rules for establishing what constitutes a widespread custom or practice, it is clear that a single incident—or even three incidents—do not suffice."); *Strauss v. City of Chicago*, 760 F.2d 765, 768 (7th Cir. 1985) (a plaintiff must allege "a pattern of conduct or a series of acts"). Here, the complaint focuses exclusively on how Plaintiff was treated without identifying any other female officer who suffered similarly. In fact, the only other female officer mentioned in Plaintiff's

---

[1] For Count I, Plaintiff alleges that the "Village has a custom, policy, and/or practice of discriminating against female officers." Doc. 27 ¶ 110. For Count III, Plaintiff alleges that the "Village has a custom policy and/or practice of creating a hostile work environment toward female police officers and/or subjecting them to harassment based on their sex/gender. *Id.* ¶ 132. For Count V, Plaintiff alleges that the "Village has a custom policy and/or practice of retaliating against female employees who complain about unlawful discrimination, harassment and or who exercise their rights under the ADA." *Id.* ¶ 157. For Count VIII, Plaintiff alleges that the "Village has a custom, policy or practice of not promoting females and/or giving preference to promoting males rather than females." *Id.* ¶ 178.

complaint was one who was promoted to Commander. *Id*. ¶ 67. Nor are there any facts alleged from which the Court could reasonably infer that other female officers would have been subjected to similar treatment.[2] For these reasons, Plaintiff has not plausibly alleged a policy and practice of discrimination that can be attributed to the Village, and the Court grants the motion to dismiss Counts I, III, V, and VIII as to the Village. *See Thomas*, 74 F.4th at 524 (pleading requirements for Section 1983 claims "must be scrupulously applied to avoid a claim for municipal liability backsliding into an impermissible claim for vicarious liability.").

### ii. Section 1983 Claims Against Individual Defendants

Plaintiff also brings Section 1983 claims against Chief Baker, Chief Barnes, and Commander Gramins in their individual capacities. To state a claim that a person acting in his individual capacity violated Section 1983, Plaintiff must allege sufficient facts for the Court to reasonably infer (1) conduct that deprived her of a right, privilege, or immunity secured by the Constitution or federal law, and (2) that the Defendant was acting under color of state law when committing the conduct alleged. *Armato v. Grounds*, 766 F.3d 713, 719–20 (7th Cir. 2014).

Most of Defendants' arguments about the sufficiency of the Section 1983 claims are equally applicable to Plaintiff's Title VII claims and are addressed in the section that follows. *See Bless v. Cook Cnty. Sheriff's Office*, 9 F.4th 565, 574 (7th Cir. 2021) ("Discrimination cases brought under § 1983 are governed by the same legal standards as those brought under Title VII."); *Huri v. Off. of the Chief Judge*, 804 F.3d 826, 835 (7th Cir. 2015) ("When a plaintiff uses

---

[2] The mistreatment Plaintiff describes is not overtly gender-based, and there are no allegations that her supervisors attributed their treatment of Plaintiff to the fact that Plaintiff was a female, referenced having treated other females similarly, or made any generalizations about female officers. This makes Plaintiff's case distinguishable from those where abuse is explicitly linked to sex, such that the court could infer other females would have had similar experiences. *See, e.g., Bohen v. City of East Chicago, Inc.*, 799 F.2d 1180, 1188 (7th Cir. 1986) (finding a pattern and practice of sexual harassment alleged where a supervisor insisted that a female firefighter keep the bathroom door open, touched her offensively and repeatedly, and the conversation in the fire station "was filled with lurid sexual descriptions").

7

§ 1983 as a parallel remedy to a Title VII harassment claim, the prima facie elements to establish liability are the same under both statutes."). Defendants raise two arguments that are specific to the Section 1983 claims: first, that Count V fails because Plaintiff has not adequately alleged that Plaintiff was retaliated against because of her sex, and second, that Count VIII fails because the individual defendants were not personally responsible for the SPD's failure to promote Plaintiff.

With respect to Count V, Defendants argue that Plaintiff's retaliation claim under the Equal Protection Clause fails because Plaintiff has not alleged that the retaliation was based on a protected trait or protected class membership. The Equal Protection Clause provides no right of action against retaliation, generally; the Equal Protection Clause only prohibits retaliation "on the basis of a protected trait or because of [a plaintiff's] membership in a particular class." *Boyd v. Illinois State Police*, 384 F.3d 888, 898 (7th Cir. 2004); *see Yatvin v. Madison Metro. Sch. Dist.*, 840 F.2d 412, 418 (7th Cir. 1988) ("retaliating against a person for filing charges of sex discrimination is not the same as discriminating against a person on grounds of sex"); *e.g. Schloss v. City of Chicago*, No. 18-CV-1880, 2019 WL 6716613, at *4 (N.D. Ill. Dec. 10, 2019) (dismissing Equal Protection retaliation claim where plaintiff contended that defendant "retaliated against her for the filing of an internal sex discrimination complaint and this lawsuit."). In the complaint, Plaintiff alleges that she "complained that she was being subjected to unequal and discriminatory treatment, negative terms and conditions of employment relative to similarly situated male employees." Doc. 27 ¶ 153. Plaintiff then alleges that she was retaliated against because of these complaints. *Id*. ¶ 154 ("After Plaintiff complained about discriminatory conduct, the Defendant took materially adverse employment actions against the Plaintiff"). At no point does Plaintiff allege that she was retaliated against because she was a

8

female or for any other protected trait. As this is the key pleading requirement for an Equal Protection Clause retaliation cause of action, the Court dismisses Count V without prejudice.

As to Count VIII, Defendants argue that Chief Baker, Chief Barnes, and Commander Gramins are not individually liable for the SPD's failure to promote Plaintiff because they were not responsible for the decisions of the promotability committee or the final arbiters of who would be promoted. Doc. 35 at 13. Section 1983 creates a cause of action based on personal fault; to be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation. *See Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012) ("An *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation."). In this case, Plaintiff has adequately pled that each of the individual defendants was personally responsible for the SPD's failure to promote Plaintiff. For example, Plaintiff has alleged that Commander Gramins brought up supposed issues with Plaintiff's performance "during the promotion process" and "during promotional evaluation meetings when the promotability committee was deciding which candidate(s) to recommend for promotion" and as a result, the committee did not recommend Plaintiff. Doc. 27 ¶ 16(d). Plaintiff has further alleged that "even though the Department found Plaintiff's conduct was acceptable, Defendant Gramins continued raising the unfounded complaints during the 2022, 2023 and 2024 promotional process to adversely impact Plaintiff's ability to be promoted." *Id*. ¶ 16(e)(2). This is sufficient to support a reasonable inference that Commander Gramins individually participated in a constitutional deprivation. Plaintiff has also alleged that Chief Barnes and Chief Baker were functionally the final decisionmakers as to who would be promoted because "the Village Manager routinely accepts the Chief's decision and recommendation." *Id*. ¶ 86. Based upon this,

9

the individual defendants' participation has been sufficiently alleged for the purposes of a motion to dismiss. The Court denies the motion to dismiss Count VIII as to the individual defendants.

### B. Title VII Claims

Counts II, IV, VI, and IX are brought against all the Village pursuant to Title VII. The Village challenges these counts as inadequately pled under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For the reasons that follow, the Court disagrees as to Counts II, VI, and IX, but agrees that dismissal of Count IV is appropriate.

### i. Gender Discrimination (Count II)

Count II alleges a claim of gender discrimination in violation of Title VII. Title VII makes it unlawful for an employer "to discriminate against any individual" with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To survive a 12(b)(6) motion to dismiss, a plaintiff need not provide evidence to support each element of the prima facie case of employment discrimination. *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022). Rather, the complaint "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis" of a protected characteristic. *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013). A complaint in federal court is expected to plead claims, not facts, and though the claim must be plausible, a plaintiff does not have to provide specific details about how the claim will be proved. *See Vincent v. City Colleges of Chicago*, 485 F.3d 919, 923 (7th Cir. 2007).

Here, a plausible claim of gender discrimination exists. The parties do not dispute that Plaintiff is a member of a protected class. Moreover, Plaintiff alleges multiple adverse employment actions that she suffered which similarly situated male employees did not,

10

including, for example: (1) denial of work from home, (2) forced use of sick time and vacation time, (3) denial of overtime, (4) burdensome timekeeping requirements, and (6) refusal of promotions for which Plaintiff was qualified. A plaintiff alleging discrimination need not show that the employer's action was "serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024). Instead, a plaintiff need only allege some injury to her employment terms and conditions which leaves the plaintiff "worse off." *Id.* at 59; *see also Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1337 (7th Cir. 2024) (including denial of a preferred vacation schedule as an actionable adverse action). Under this standard, Plaintiff's allegations of forced use of leave, denial of payment for overtime, and failure to promote easily qualify as adverse employment actions. *See Alamo v. Bliss*, 864 F.3d 541, 552 (7th Cir. 2017) (listing as adverse employment actions: "(1) diminishing an employee's compensation, fringe benefits, or other financial terms of employment, including termination; (2) reducing long-term career prospects by preventing him from using the skills in which he is trained and experienced, so that the skills are likely to atrophy and his career is likely to be stunted; and (3) changing the conditions in which an employee works in a way that subjects him to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in his workplace environment."); *Lewis v. City of Chi.*, 496 F.3d 645, 654 (7th Cir. 2007) (finding that denial of overtime could constitute an adverse employment action). Furthermore, depending upon the facts adduced during discovery, increased administrative expectations and restrictions on working from home could also qualify. Finally, given that Plaintiff has pled that no similarly situated males were subjected to this treatment, Plaintiff plausibly has alleged a link between her gender and the adverse employment actions. "All the complaint need do is state a grievance. Details and proofs

11

come later." *Thomas*, 120 F.4th at 1338. If any of Plaintiff's claims are factually deficient, the proper time to address it is summary judgment. The Court denies dismissal of Count II. [3]

### ii. Hostile Work Environment (Count IV)

Count IV alleges a claim of hostile work environment discrimination in violation of Title VII. "Title VII's general prohibition against … discrimination by employers includes a prohibition against creating a hostile or abusive work environment." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014). Title VII is violated when "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id*. To state a hostile work environment claim, a plaintiff must allege that (1) she was subjected to unwelcome harassment; (2) the harassment was based on a protected characteristic; (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability. *Alamo v. Bliss*, 864 F.3d 541, 549 (7th Cir. 2017). Whether the workplace is hostile depends on the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 549-50. Although "a workplace need not be 'hellish' to constitute a hostile work environment, a hostile work environment must be so pervaded by discrimination that the terms and conditions of employment are altered." *Id.*

Defendant argues that Plaintiff has not alleged any harassment at all, and therefore cannot establish severe or pervasive harassment. The Court agrees that the allegations in the complaint

---

[3] The reasoning and conclusions set forth in this section are equally applicable to Defendants' claims of inadequate pleading with respect to Count I, which alleges gender discrimination in violation of Section 1983.

do not plausibly allege a hostile work environment. The Court recognizes that it "premature at the pleadings stage to conclude just how abusive [a plaintiff's] work environment was" and instead the Court's job is to assess whether plausible allegations of abusiveness have been pled. *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 834 (7th Cir. 2015). In this case, Plaintiff has pled that she was unfairly monitored and criticized by her supervisors, and subjected to a different set of administrative expectations than male employees. But Plaintiff has not alleged that during this time any co-worker was aggressive, hostile, or demeaning toward her. Subjecting an employee to excessive monitoring and workplace discipline may be discriminatory if others are not treated similarly, but it does not amount to a hostile work environment. *See Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018)); *see also Hambrick v. Kijakazi*, 79 F.4th 835, 843 (7th Cir. 2023) (finding that "heavy workload, management's high expectations, and routine workplace discipline" is not enough to establish a hostile work environment). Plaintiff has not plausibly alleged that she was subjected to an abusive working environment permeated with intimidation, ridicule, and insult. The Court therefore dismisses Count IV without prejudice. Count III, which alleges a Section 1983 hostile work environment claim, is likewise dismissed without prejudice.

### iii. Retaliation (Count VI)

Count VI alleges a claim of retaliation in violation of Title VII. Title VII prohibits an employer from retaliating against an employee because that employee has "opposed any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e-3(a). A retaliation claim requires the plaintiff to allege that she "engaged in statutorily protected activity and was subjected to adverse employment action as a result of that activity." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013). The protected activity must be specifically identified,

and the adverse employment action "must be one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Roney v. Illinois Dep't of Transp.*, 474 F.3d 455, 461 (7th Cir. 2007). While Plaintiff need not "present proof of a causal link between the protected expression ... and the adverse employment action" at this stage, *Luevano*, 722 F.3d at 1029, there must be some facts from which one could draw the inference that the protected activity could have caused the adverse employment action. *See Cervantes v. Ardagh Group*, 914 F.3d 560, 566 (7th Cir. 2019).

Here, Plaintiff states a plausible claim of retaliation. The parties do not dispute that Plaintiff engaged in statutorily protected activities when she complained of gender discrimination and filed an EEOC complaint in March 2023. Plaintiff alleges that Commander Gramins, Chief Barnes, and Chief Baker were all made aware of the EEOC complaint "prior to the most recent promotional process." Doc. 27 ¶¶ 96-97. Plaintiff alleges that she was highly qualified for promotion – having received exceptional performance reviews and the highest assessment score in the promotional process in 2022. *Id*. ¶¶ 180, 185. Still, she was not promoted in 2023 or 2024. This is enough to allege an adverse employment action plausibly connected to Plaintiff's discrimination complaints. The Court therefore denies dismissal of Count VI.

 **iv. Failure to Promote (Count IX)**

Count IX alleges a claim of failure to promote in violation of Title VII. In order to establish a prima facie case in a failure-to-promote context, a plaintiff "must show that (1) [she] belongs to a protected class, (2) [she] applied for and was qualified for the position sought, (3) [she] was rejected for that position and (4) the employer granted the promotion to someone outside of the protected group who was not better qualified than the plaintiff." *Grayson v. City of Chicago*, 317 F.3d 745, 748 (7th Cir. 2003).

Defendants argue that Plaintiff has failed to state a Title VII claim for failure to promote because Plaintiff's did not allege that "male applicants were not passed over for promotion after similar circumstances of discipline and complaints of abuse of overtime, and poor time keeping and management." Doc. 35 at 12. However, Plaintiff does not need to plead such facts to survive a motion to dismiss. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511-12 (2002) (rejecting argument that plaintiff must allege all elements of the *McDonnell Douglas* prima facie case in order to state a claim of discrimination); *Luevano v. Wal–Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013) ("the Supreme Court has made clear that the pleading standards in Title VII cases are different from the evidentiary burden a plaintiff must subsequently meet"). As is discussed above, Plaintiff has pled that she was a member of a protected class, applied and was qualified for a promotion she did not receive, and that a less-qualified man received the promotion. This adequately alleges that Defendant failed to promote her because of her sex. The Court therefore denies the motion to dismiss Count IX.

### C. ADA Retaliation Claim (Count VII)

Count VII alleges retaliation in violation of the ADA. Defendant moves to dismiss Plaintiff's ADA retaliation claim on the grounds that Plaintiff fails to allege that she suffers from a qualifying ADA disability, engaged in a statutorily protected activity, or that an adverse employment action was taken against her. The Court finds dismissal of this claim appropriate because Plaintiff has not plausibly alleged an adverse employment action related to this claim.

The anti-retaliation provision of the ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). To

state a claim for ADA retaliation, a plaintiff must plead that she engaged in a protected activity, suffered an adverse employment action, and that there is a causal link between the two. *Rodrigo v. Carle Foundation Hosp.*, 879 F.3d 236, 243 (7th Cir. 2018). The "anti-retaliation provision of the ADA ... uses similar language to that in Title VII ... thus, courts look to Title VII retaliation cases for guidance in deciding retaliation cases under the ADA." *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009).

Here, Plaintiff has alleged that she was disabled due to shoulder, neck, and eye injuries. Plaintiff also has pled that she requested reasonable accommodation for that disability, which meets the statutorily protected activity element. *See Trahanas v. Northwestern Univ.*, 64 F.4th 842, 856 n.6 (7th Cir. 2023) ("To have engaged in an activity protected by the ADA, the employee must have asserted her rights under the ADA by either seeking an accommodation or raising a claim of discrimination due to her disability."). However, Plaintiff does not allege that her statutorily protected activity was close in time to the failure to promote her, or anything else that could lead to the reasonable inference that there was some connection between the two. *Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 924 (7th Cir. 2019) (Relevant evidence connecting activity to adverse action may include "suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence the employer's proffered reason for the adverse action was pretextual.") For all the Court can tell, Plaintiff's ADA accommodations were requested and received many years before the failure to promote her (possibly even before she was promoted to Sergeant). The Court therefore dismisses Count VII without prejudice.

    **D. Overtime and Wage Claims (Counts X, XI, and XII)**

Finally, Defendant argues for dismissal of the overtime and wage claims brought in Counts X, XI, and XII. Defendant argues that these claims must fail because Plaintiff did not allege sufficient facts, such as what hours she worked, what work she performed, and the periods in which Defendants allegedly failed to compensate Plaintiff for overtime. The Court disagrees that this level of detail is necessary to survive a motion to dismiss.

Under the FLSA, non-exempt employees must be paid at least the federal minimum wage for all hours worked, and time and a half for hours worked over 40 hours in a week. 29 U.S.C. § 207(a)(1); *Sandifer v. U.S. Steel Corp.*, 678 F.3d 590, 592 (7th Cir. 2012).[4] While defining "work" can at times be difficult because it is not defined in the Act, coverage is intended "when an employee is required to give up a substantial measure of [her] time and effort." *Sandifer*, 678 F.3d at 593.

To state a claim for failure to pay overtime, a plaintiff need not plead "infinitesimal details," but "must provide some specific facts to ground their claims." *Dobrov v. Hi-Tech Paintless Dent Repair, Inc.*, No. 20-CV-00314, 2021 WL 1212796 (N.D. Ill. Mar. 31, 2021). Indicators that overtime worked was frequently uncompensated can help a claim survive dismissal. *Compare Trujillo v. Mediterranean Kitchens, Inc.*, No. 17-CV-01887, 2017 WL 2958240, at *1 (N.D. Ill. July 11, 2017) (granting motion to dismiss when plaintiff made no allegation as to frequency of the overtime and did not allege specific weeks in which he worked more than 40 hours per week); *with Dobrov*, 2021 WL 1212796, at *4 (denying motion to dismiss despite plaintiff not citing specific weeks when he worked over 40 hours and not alleging how many total overtime hours he worked because plaintiff had alleged that failure to

---

[4] Law enforcement departments can receive an exemption from this provision and declare work periods of up to twenty-eight consecutive days, with overtime required only when an officer works more than 171 hours in a designated twenty-eight-day work period. 28 U.S.C. § 207(k)(1); *Alexander v. City of Chicago*, 994 F.2d 333, 334 (7th Cir. 1993). Neither party has argued that the SPD has received this exemption.

17

pay overtime was "routine"). The issue at pleading ultimately boils down to whether Defendant has sufficient notice of the claims. This does not require plaintiffs to "plead specific dates and times that they worked undercompensated hours" so long as they "provide some factual context that will nudge their claim from conceivable to plausible." *Hirst v. Skywest, Inc.*, 910 F.3d 961, 966 (7th Cir. 2018).

The Court finds that Plaintiff has successfully pled a claim under the FLSA and its state-law counterpart the IMWL. Plaintiff alleges that in September 2022, she was instructed by Chief Barnes that her work with the P&P unit required her to receive and respond to communications outside of work hours. Doc. 27 ¶ 51. She further alleged that she "typically" had to respond to after-hours calls from other officers in her unit, as well as calls or texts regarding traffic grants, rescheduling requests, evidence tech questions, firing range issues, lost and found inquiries, medical leave notices, vendor calls, and issues related to body cameras and fleet vehicles. *Id.* ¶¶ 53-55. It is plausible that these types of communications could create a great deal of after-hours work, and Plaintiff has alleged that she was uncompensated for at least seventy hours of overtime. *Id.* ¶ 207. This is sufficient to state a claim.

The Court does not reach the same conclusion as to Plaintiff's claim under the IWPCA. The IWPCA allows for a cause of action based on compensation wrongfully withheld pursuant to an employment contract or agreement. *See* 820 ILCS 115/2 (defining "wages" as amounts owed "pursuant to an employment contract or agreement"). Therefore, the plaintiff must allege that she "is owed compensation from defendants pursuant to an employment agreement." *Das v. Tata Consultancy Servs. Ltd.*, 118 F.4th 903, 907 (7th Cir. 2024). While the agreement does not need to rise to the level of a formally negotiated contract, the plaintiff does need to provide sufficient

factual matter to support the reasonable inference that the employer manifested mutual assent to pay. *Id.* at 910-11.

The complaint in this case does not allege that Plaintiff was party to an employment contract or other agreement to pay her for after-hours work with the P&P. To the contrary, Plaintiff alleges in the complaint that Chief Barnes told her that she was "not allowed to log or seek compensation" for that work. Doc. 27 ¶ 51. Plaintiff references in her response to the motion to dismiss the Village Compensation Policy. Doc. 38 at 17. But the Court generally cannot consider facts outside of the complaint when deciding a motion to dismiss. Because Plaintiff has failed to allege compensation wrongfully withheld pursuant to an employment contract or agreement, the Court dismisses Count XII without prejudice.

## CONCLUSION

Counts I, III, V, and VIII are dismissed as they relate to the Village without prejudice. Counts III, IV, V, VII, and XII are dismissed in their entirety without prejudice. If Plaintiff believes that she can amend the complaint to state valid claims consistent with the reasoning laid out in this opinion, she is granted leave to do so.

Dated: May 23, 2025

_____
APRIL M. PERRY
United States District Judge